572 So.2d 1327 (1990)
Rona E. YURGEL, etc., Petitioner,
v.
Glenn G. YURGEL, Respondent.
No. 74610.
Supreme Court of Florida.
November 1, 1990.
Opinion Clarified November 1, 1990.
A. Matthew Miller of Miller, Schwartz & Miller, P.A., Hollywood, for petitioner.
Marc H. Brawer of Law Office of Mark H. Brawer, Sunrise, for respondent.
*1328 Deborah Marks of Greene & Marks, P.A., Miami, amicus curiae for Family Law Section of The Florida Bar.

CORRECTED OPINION
KOGAN, Justice.
We have for review Yurgel v. Yurgel, 546 So.2d 746 (Fla. 4th DCA 1989), which certified the following questions of great public importance:
1) Is an appeal from a custody order in the lower court a "custody proceeding" within the meaning of the UCCJA [Uniform Child Custody Jurisdiction Act] so as to toll the vesting of "home state" jurisdiction in a foreign state while the original state continues to exercise jurisdiction over the parties and the subject matter?
2) Does the filing of a petition for modification of custody in the lower court, within six months of the children residing in Florida, and while an appeal is pending in Florida, toll the vesting of "home state" jurisdiction in a foreign state? and
3) Is relinquishment of jurisdiction pursuant to Rule 9.600(b) of the Florida Rules of Appellate Procedure a condition precedent to the preservation of continuing "home state" jurisdiction?
Id. at 748-49. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
A final judgment in the dissolution of the marriage of Rona and Glenn Yurgel was entered in March 1986. The order gave primary residence of the children to the husband. The children left Florida with their father in August 1986 and took up permanent residence in New York. There is no question that initial jurisdiction of the custody dispute was validly acquired by the Florida court.
In December 1986, during the pendency of the appeal of the final judgment, the wife petitioned the trial court to modify the custody provisions. She also moved for an emergency stay of the children's return to New York after a Christmas-vacation visit to her in Florida. The emergency stay was denied, but the court did not immediately act on the request for modification.
In May 1987 the district court affirmed the final judgment. Yurgel v. Yurgel, 505 So.2d 636 (Fla. 4th DCA 1987). This opinion, however, did not dispose of the wife's petition, which the trial court had not yet addressed.
During the next six months, the husband filed several notices to hear a motion to dismiss the wife's petition. No hearing was held. In November 1987 the wife filed an amended supplemental petition for modification, and the husband again moved to dismiss. The husband's motion was denied in January 1988.
A final hearing was scheduled for December 1988. Before then, however, the trial court denied the husband's motion for summary judgment and sua sponte denied the wife's supplemental petition. The wife appealed to the district court.
The Fourth District affirmed in part and reversed in part. It found that the appeal had divested the trial court of all jurisdiction, thus rendering the wife's petition to modify a nullity. The district court then concluded that the amended petition did not "relate back" to the initial petition. As a result, the district court concluded that the trial court had lost jurisdiction of the custody dispute because the children had been outside Florida for more than six months prior to the date the amended petition was filed. It cited a portion of the Florida UCCJA, section 61.1308, Florida Statutes (1987), as supporting this proposition.
However, the district court remanded for consideration of whether a "significant connection" gave the trial court jurisdiction. Yurgel, 546 So.2d at 747-48. In a partial dissent, Judge Warner argued that the real issue in this case is whether Florida was an inconvenient forum for the continued litigation of this custody dispute. Id. at 748.
Throughout the extensive procedural history recited above, the children have continued *1329 to return to Florida for visitation with the mother for a period of at least three months in every year.
The resolution of the issues presented by this case turns upon the interplay of several statutes.
The portion of the UCCJA upon which the district court relied provides in pertinent part:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state:
1. Is the home state of the child at the time of commencement of the proceeding, or
2. Had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state[.]
§ 61.1308, Fla. Stat. (1987).
This basic grant of jurisdiction, however, is qualified by other relevant statutes. In one of its most important operative provisions, the UCCJA forbids a state to modify the custody decrees of other states unless those other states no longer have, or have declined to exercise, jurisdiction. § 61.133, Fla. Stat. (1987). Since the UCCJA has been adopted by most American jurisdictions, this provision is in force virtually nationwide. It thus binds not only the courts of Florida, but also the courts of every other state that has adopted the UCCJA.
The UCCJA further provides:
A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
§ 61.1316(1), Fla. Stat. (1987). This provision thus codifies and strengthens the longstanding judicial doctrine of inconvenient forum.
Finally, the UCCJA itself is subject to a separate federal statute, the Parental Kidnapping Prevention Act (PKPA), which provides in pertinent part:
(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if 
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding. .. .
... .
(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
28 U.S.C. § 1738A (1987). Under the supremacy clause of the Constitution, the PKPA supersedes any and all inconsistent state laws. Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).
The overriding purpose of the state and federal statutory framework outlined above is "to prevent interstate competition and conflicts" about custody disputes among the various jurisdictions of the American Union. Padgett v. Pettis, 445 So.2d 633, 635 (Fla. 1st DCA), cause dismissed, 450 So.2d 487 (Fla. 1984). The UCCJA, in other words, was designed to bring order out of the chaos that once marked interstate custody disputes when the courts of different states claimed authority *1330 to issue contradictory custody orders. This intent is the polestar by which these enactments must be interpreted, see State v. Webb, 398 So.2d 820, 824 (Fla. 1981); Wakulla County v. Davis, 395 So.2d 540, 542 (Fla. 1981), and it is the obligation of the Florida courts to honor this intent even if it seems contrary to the literal language of the statute.
In this vein, we do not believe the statutes were intended to create uncertainty as to exactly which state may exercise jurisdiction over a prior Florida custody decree once a parent, a child, or a parent and child have left Florida. Rather, the primary purpose of the UCCJA is to create certainty by ensuring that jurisdiction over a specific custody dispute can be obtained only by a single state at a time. To this end, a sure and definite procedure must exist by which one state relinquishes to another state the jurisdiction it validly has obtained over a custody dispute.
The opinion below, especially in the phrasing of the certified questions, reflects some confusion as to the application of these principles.
Contrary to the assumptions of the opinion below, we believe the primary purpose of section 61.1308 is not as a gauge of the continuing jurisdiction of the Florida courts over custody disputes for which jurisdiction already has been properly acquired. Rather, the statute is concerned primarily with determining when a Florida court may acquire initial jurisdiction over a custody dispute. The statute, in other words, is meant to prevent competing and inconsistent exercises of jurisdiction by two or more states, not to terminate jurisdiction that already has been validly acquired by Florida. Accord Roby v. Nelson, 562 So.2d 375 (Fla. 4th DCA 1990).
This is a legal principle reflected in both the common and statutory law of this state. Florida law, for instance, clearly holds that a court has inherent continuing jurisdiction over its own custody decrees. Padgett, 445 So.2d at 635; Golstein v. Golstein, 442 So.2d 330 (Fla. 4th DCA 1983); Phillips v. Nationwide Mut. Ins. Co., 347 So.2d 465, 466 (Fla. 2d DCA 1977). See Evans v. Cone, 62 So.2d 907 (Fla. 1953).
This principle is equally supported by the well-documented history underlying the UCCJA. Professor Brigitte Bodenheimer, reporter for the UCCJA, has written extensively on the subject and reports that one of the primary evils eliminated by the UCCJA was "concurrent jurisdiction" by two or more states over the same custody dispute. Bodenheimer has detailed the problems caused when one state modified another's decree even though the latter still possessed jurisdiction of the cause. The undesirable results were contradictory custody awards and judicial encouragement of the parental kidnapping of children into more "favorable" jurisdictions. Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA, 14 Fam.L.Q. 203 (1981). Accord Bodenheimer, The Rights of Children & the Crisis in Custody Litigation: Modification of Custody in and out of State, 46 U.Colo.L.Rev. 495 (1975); Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand.L.Rev. 1207 (1969); Coombs, Interstate Child Custody: Jurisdiction, Recognition, & Enforcement, 66 Minn.L.Rev. 711, 810-12 (1982).
Bodenheimer went on to explain:
The UCCJA was designed "to bring some semblance of order into the existing chaos." In order to do so, the Act had to go further than simply codifying the principle of recognition of out-of-state custody decrees. It had to strengthen the continuing jurisdiction of the state of the initial decree; it had to insulate that jurisdiction from out-of-state interference; in other words, it had to bestow legal effect upon that continuing jurisdiction which operates beyond the state borders.

Accordingly, Section 14 of the UCCJA [codified at section 61.133, Florida Statutes *1331 (1987)] provides that once "a court of another state has made a custody decree, a court of this state shall not modify that decree." In other words, the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction.

Bodenheimer, 14 Fam.L.Q. at 214 (emphasis added; footnote omitted). In this way, the UCCJA furthers two central objectives: (1) discouraging the shifting of children from state to state as a way of forum shopping, and (2) preventing conflicts among jurisdictions once a state has entered a custody decree. Id.
We agree that this is an accurate characterization of Florida's UCCJA. As Professor Bodenheimer has noted, "the rules governing modification jurisdiction are markedly different from the rules applicable to initial jurisdiction." Id. at 215 (citation omitted). Initial jurisdiction is governed, as we have noted above, primarily by Section 3 of the UCCJA, which is codified as section 61.1308. "Modification jurisdiction," however,
is governed primarily by Section 14 [codified at section 61.133], reinforced, where necessary, by the stronger clean hands rule of Section 8(b) [codified at § 61.1318(2), Fla. Stat. (1987)]. As the Commissioners' Note to Section 6 states, "once a custody decree has been rendered in one state, jurisdiction is determined by Sections 8 and 14." This means that only one state  the state of continuing jurisdiction  has power to modify the custody decree. Only that state decides whether to decline the exercise of its jurisdiction in any particular case.

Bodenheimer, 14 Fam.L.Q. at 216 (emphasis added).
As the First District correctly noted in Hamill v. Bower, 487 So.2d 345, 347 (Fla. 1st DCA 1986),
initial jurisdiction is determined by guidelines which look to the state with the closest connections to the child and to information about present and future well-being. However, modification jurisdiction is best viewed as an extension of the recognition and enforcement provisions of the Uniform Act.
Bodenheimer's analysis and the views of Hamill are fully reflected in authority from other jurisdictions, which uniformly holds that the UCCJA does not operate to divest a court of continuing jurisdiction unless virtually all contacts have been lost with the forum state. Brown v. Brown, 476 So.2d 114 (Ala. Civ. App. 1985); Kumar v. Superior Court, 32 Cal.3d 689, 652 P.2d 1003, 186 Cal. Rptr. 772 (1982); Kraft v. District Court, 197 Colo. 10, 593 P.2d 321 (1979); Padgett; Allen v. Allen, 64 Haw. 553, 645 P.2d 300 (1982); Kelly v. Warner, 119 Ill. App.3d 217, 77 Ill.Dec. 273, 460 N.E.2d 329 (1983); Pierce v. Pierce, 287 N.W.2d 879 (Iowa 1980); Harris v. Melnick, 314 Md. 539, 552 A.2d 38 (1989); Craighead v. Craighead, 710 S.W.2d 501 (Mo. App. 1986); Jefferson v. Downs, 107 Misc.2d 852, 436 N.Y.S.2d 169 (1981); Neal v. Neal, 69 N.C. App. 766, 318 S.E.2d 255 (1984); Sinclair v. Albrecht, 287 S.C. 20, 336 S.E.2d 485 (1985); Hoyle v. Wilson, 746 S.W.2d 665 (Tenn. 1988); Hutchings v. Biery, 723 S.W.2d 347 (Tex. App. 1987); Middleton v. Middleton, 227 Va. 82, 314 S.E.2d 362 (1984).
We recognize, of course, that there may be circumstances in which equity and fairness require the courts of Florida to decline to exercise continuing jurisdiction because another state is the more appropriate forum. This particularly is true when Florida, for whatever reason, has become an inconvenient forum. See § 61.1316(1), Fla. Stat. (1987).
Nevertheless, we cannot agree with the district court's assumption that section 61.1308 somehow operates to "automatically" terminate jurisdiction already validly acquired merely because the child has resided outside the state for more than six months when the child clearly has maintained *1332 significant contacts with Florida. To the contrary, jurisdiction must be presumed to continue once it is validly acquired under section 61.1308; and it continues up until a Florida court expressly determines on some other basis that jurisdiction no longer is appropriate, until virtually all contacts with Florida have ceased, until some other Florida statute terminates jurisdiction, or until jurisdiction is terminated by operation of the PKPA. See 28 U.S.C. § 1738A (1987).
This rule is a matter of necessity, as Professor Bodenheimer's analysis so amply shows. A custody proceeding properly begun in Florida remains under Florida's jurisdiction until Florida determines otherwise, unless virtually all contacts with the state clearly have been lost. Any other rule comes perilously close to resurrecting the discredited concept of concurrent jurisdiction in custody disputes. The rule adopted by the district court literally invites other states to guess as to when Florida's jurisdiction has ended. This, in turn, will encourage forum shopping. Under such a rule, a parent might circumvent Florida's jurisdiction merely by removing a child to another state that is willing to declare that Florida's jurisdiction had ended because the child had lived elsewhere for at least six months. This can only encourage parental kidnapping  one of the primary evils the UCCJA was meant to end.
For the foregoing reasons, we find the first certified question to be based on an erroneous assumption of law and answer it with a qualified affirmative. While we agree that an appeal from a final custody decree is a "custody proceeding," we do not agree that the UCCJA could ever operate to "vest" jurisdiction of the cause in a foreign state under the facts at hand. The trial court has continuing jurisdiction over its own prior decree because minimum contacts clearly have been maintained with Florida. Thus, under the facts of this case, the timing of the mother's appeal, petition and amended petition is irrelevant. Under the UCCJA, the trial court clearly would have had continuing jurisdiction whether or not the appeal, the petition or the amended petition ever was filed. The trial and district courts erred in holding that the UCCJA terminated jurisdiction in favor of another state.
The second certified question also is based on an erroneous assumption of law, and we answer it with a qualified affirmative. We agree that "home state" jurisdiction did not vest in a foreign jurisdiction in this instance. However, we disagree with the district court's assumption that the filing of a petition might have been necessary to prevent such vesting. The Florida court would have retained continuing jurisdiction whether or not a petition was filed during the six-month period or any other period of time, and this jurisdiction would have lasted up until the point that the trial court itself declined to exercise jurisdiction for some other reason, until minimum contacts with Florida were lost, or until the PKPA or other applicable law operated to terminate Florida's jurisdiction.
We answer the third certified question in the negative. During an appeal of a custody decree, relinquishment of jurisdiction by the appellate court is not necessary to preserve the continuing jurisdiction of the trial court. In appropriate cases, the pendency of the appeal may prohibit the trial court from acting upon the petition until the mandate is issued;[1] but the trial court's continuing jurisdiction remains in effect under the conditions outlined above. This continuing jurisdiction exists independently of, and is unaffected by, the appeal.
For the foregoing reasons, we quash the opinion below and remand for further proceedings consistent with the views expressed here.
It is so ordered.

*1333 ON PETITION FOR CLARIFICATION
In the original opinion issued in this cause, we remanded "without prejudice for the parties to raise the inconvenient forum issue again on remand." On petition for clarification, we agree with the wife that this statement was inartfully phrased. Accordingly, we readopt our opinion in full except that we delete the above-quoted clause from the end of the last sentence of the penultimate paragraph. In doing so, we do not imply that the question of inconvenient forum is absolutely barred from any further consideration on remand, only that such claims may be barred to the extent they raise law or facts previously litigated to finality. See § 61.1316(1), Fla. Stat. (1987).
For the foregoing reasons, we readopt our prior opinion as modified here.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH and BARKETT, JJ., concur.
GRIMES, J., concurs with an opinion.
GRIMES, Justice, concurring.
I would answer the first certified question both yes and no. The pending appeal from the custody order is clearly a custody proceeding. I do not think this has anything to do with whether New York could acquire "home state" jurisdiction, but it would dictate that New York should not exercise jurisdiction because of the prohibition against maintaining simultaneous proceedings found in section 6 of the Uniform Child Custody Jurisdiction Act (1968) (the Act).[2]
I would answer the second certified question in the affirmative because I believe that the filing of the petition for modification in the trial court within six months of the time the child left the state gave the court jurisdiction under section 61.1308(1)(a)(2), Florida Statutes (1987).
While the trial court could not have entered an order upon the motion as long as the appeal was pending, the timeliness of the filing so as to fall within the requirements of section 61.1308(1)(a)(2) should not be affected by the failure to obtain a relinquishment of jurisdiction by the appellate court. Thus, my answer to the third certified question would be in the negative.
We have resolved the question of jurisdiction in this case by the manner in which we have answered the certified questions. The balance of our effort is directed toward clarifying the circumstances under which the court which enters a custody decree has jurisdiction to modify the decree. I cannot agree that section 61.1308 is not relevant to the determination of jurisdiction in modification proceedings. The statute says that the court has "jurisdiction to make a child custody determination by initial or modification decree if" certain circumstances exist. § 61.1308, Fla. Stat. (1987). I believe the statute supplants any inherent jurisdiction the court may have over its own custody orders. Hence, when a modification petition is filed, jurisdiction must be acquired under at least one of the subsections of section 61.1308. I do, however, agree with the majority opinion that the drafters of the Uniform Child Custody Jurisdiction Act intended that deference be given to the state which entered the initial custody decree, even if the language of the Act fell short in making this clear.
The issue which has created the most confusion is whether the court which has issued the custody decree has jurisdiction to modify that decree when the child is no longer present in the state and there is no home state jurisdiction under section 61.1308(1)(a). Under these circumstances, unless you assume that the court has inherent continuing jurisdiction, the only source of jurisdiction is section 61.1308(1)(b), which reads as follows:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody *1334 determination by initial or modification decree if:
... .
(b) It is in the best interest of the child that a court of this state assume jurisdiction because:
1. The child and his parents, or the child and at least one contestant, have a significant connection with this state, and
2. There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
As written, this provision seems to present serious jurisdictional obstacles. Several Florida courts in varying circumstances have held that they lacked jurisdiction under this subsection to modify prior custody decrees. E.g., Sperry v. Sperry, 530 So.2d 1043 (Fla. 2d DCA), review denied, 538 So.2d 1255 (Fla. 1988); Prickett v. Prickett, 498 So.2d 1060 (Fla. 5th DCA 1986); Hollander v. Hollander, 466 So.2d 268 (Fla. 3d DCA 1985).
There is another section of the Act, however, which bears directly upon this issue. Section 61.133(1)(a) and (b), Florida Statutes (1987),[3] reads:
(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless:
(a) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree; and
(b) The court of this state has jurisdiction.
It is this provision to which the drafters of the Act point in support of their contention that the Act was intended to strengthen the continuing jurisdiction of the state of the initial decree and insulate it from out-of-state interference. The commissioners' note which accompanied that section of the Act reads in part:
Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. See People ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. Compare Ratner, Child Custody in a Federal System, 62 Mich.L. Rev. 795, 821-2 (1964).
For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6 1/2 months (3 1/2 months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the "home state" of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law. See Clark, Domestic Relations 322-23 (1968). Also, if the father in the same case continued *1335 to live in state 1, but let his wife keep the children for several years without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease.
Uniform Child Custody Jurisdiction Act § 14 comment (1968). Further, the commissioners' note to section 6 of the Act states:
Once a custody decree has been rendered in one state, jurisdiction is determined by sections 8 and 14.[4]
Uniform Child Custody Jurisdiction Act § 6 comment (1968).
As noted in the majority opinion, Professor Bodenheimer, who was the reporter for the Act, believed that section 61.1308 only applies to original proceedings and has nothing to do with modification even though the section specifically refers to modification. She asserted that the Act's principal barrier against out-of-state modifications is provided by the exclusive jurisdiction provision of section 61.133. The problem with this analysis is that section 61.133 only precludes a state which otherwise has jurisdiction from modifying the custody decree when the state which entered the decree still has jurisdiction "under jurisdictional prerequisites substantially in accordance with this act." Thus, in order to determine whether the state which issued the original custody decree still has jurisdiction, section 61.133 seems to require a reference back to section 61.1308.
A number of courts have wrestled with this question. In an effort to give meaning to the apparent intent of the drafters of the Act, several courts have concluded that the court which entered the original custody decree had jurisdiction to modify the decree under a liberal interpretation of that portion of the Act corresponding to section 61.1308(1)(b). For example, in Harris v. Melnick, 314 Md. 539, 552 A.2d 38 (1989), a Maryland court had awarded custody of a child to its mother, with the father having visitation rights. With the permission of the court, the mother and child moved to Colorado. Several years later, the father filed a petition in the Maryland court seeking to extend his visitation rights. Recognizing that Colorado had "home state" jurisdiction, the Maryland Supreme Court nevertheless concluded that the Maryland court had jurisdiction under a statutory provision corresponding to section 61.1308(1)(b). The court pointed out that the child had visited regularly with his father in Maryland and that in addition to the father there were several Maryland witnesses who could testify concerning the present and future effects of any custody or visitation modification. After an extensive discussion of the purpose of the Act and several references to Professor Bodenheimer's interpretation, the court noted:
Judicial decisions interpreting the Uniform Act have not sharply delineated what quantum of facts constitutes "a significant connection" and "substantial evidence." Courts generally give the decree-rendering state a strong presumption of continuing modification jurisdiction until all or almost all connection with the parents and the child is lost.
Id. at 554, 552 A.2d at 45. Several of the other cases cited in the majority opinion adopted the same approach. Florida courts have also reached similar conclusions. E.g., Johnson v. Farris, 469 So.2d 221 (Fla. 2d DCA 1985); O'Connor v. O'Connor, 447 So.2d 1034 (Fla. 4th DCA 1984); Reeve v. Reeve, 391 So.2d 789 (Fla. 1st DCA 1980).
Thus, I am in essential agreement with the thrust of the majority opinion on this issue, although I am convinced that jurisdiction for modification depends upon meeting one of the requirements of section 61.1308. I believe that section 61.1308(1)(b) should be liberally construed to give the state which entered the original custody decree jurisdiction to modify that decree when at least one parent continues to live *1336 in the state and the child has had meaningful contact with the state, such as visitation.
NOTES
[1] We express no opinion as to whether this is the case in the present cause, since this is an issue lying beyond the certified questions.
[2] Section 6 corresponds to section 61.1314, Florida Statutes (1987).
[3] Section 14 of the Act.
[4] Section 8 corresponds to section 61.1318, Florida Statutes (1987) (clean hands); section 14 corresponds to section 61.133, Florida Statutes (1987), quoted above.