636 So.2d 796 (1994)
Shawn T. BOOKER, and his parents, Glen S. Booker and Rosa L. Booker, Appellants,
v.
Pamela L. BOOKER, Appellee.
No. 93-3729.
District Court of Appeal of Florida, First District.
May 3, 1994.
H. Michael Madsen and John W. Forehand of Messer, Vickers, Caparello, Madsen, Lewis, *797 Goldman & Metz, P.A., Tallahassee, for appellants.
Laura S. Thrasher, Tallahassee, for appellee.
ZEHMER, Chief Judge.
Appellants are the Father and paternal grandparents of the minor child involved in this case. They appeal the trial court's order dismissing, on grounds of forum non conveniens, their "Verified Petition to Determine Paternal Responsibility and Visitation Rights" with respect to the child. We reverse because the order contravenes the provisions of section 61.1316, Florida Statutes (1991).
This case implicates the Uniform Child Custody Jurisdiction Act (UCCJA), as enacted in sections 61.1302-61.1348, Florida Statutes (1991). The marriage of the Father and the Mother, Appellee, was terminated by a final judgment of dissolution rendered in January 1990 while the Father was incarcerated in prison. That judgment, entered by the trial court below, awarded the Mother sole parental responsibility of their minor child and decreed that the Father "shall not be entitled to share parental responsibility." The judgment was silent as to the Father's visitation rights, and it reserved jurisdiction "to determine in the future any child support rights the parties' minor child may have."
Soon after his release from prison in April 1992, the Father filed the instant petition in the court that granted the final judgement of dissolution seeking to determine his rights to visitation with the child. He was joined in the petition by his parents, the child's paternal grandparents. The petition alleged that the Mother and child had recently removed themselves from Florida, and that until then, the Father had maintained a regular and close relationship with the child, in that she often visited the Father during his incarceration. It also was alleged that the child visited regularly with the grandparents until shortly before she was moved from the state. The petition further alleged that since the Father's release from prison in April 1992, he has displayed remarkable rehabilitation in that he has obtained full-time employment and has been promoted to manager by his employer; he has remained free of alcohol and drugs; and he has attended church regularly with his parents (who moved to Tallahassee to be near the Father during his incarceration).
For purposes of jurisdiction under the UCCJA, the petition alleged that the child had resided in Tallahassee, Florida, from the date of her birth on November 14, 1988, until on or about April 23, 1992, when Appellants believe the child was taken by the Mother to Houston, Texas. Significantly, the exact whereabouts of the Mother and child were not confirmed when the petition was filed and still have not been revealed to the trial court or this court.[1] The petition sought to clarify the trial court's judgment regarding visitation, and if the court should determine that no visitation rights existed, Appellants sought to modify that judgment to allow reasonable visitation by them. The petition was filed on August 20, 1992, less than 6 months after the date the child was believed to have moved to another state.
Appellants were unsuccessful in determining the residence of the mother and child and thus notice and process could not be personally served on her. Eventually, on the Father's motion, the trial court authorized process to be served on the Mother by publication pursuant to paragraph (d) of subsection 61.1312(1), Florida Statutes (1991).[2] The motion and supporting affidavit established that after a diligent and extensive search, the Father and grandparents were unable to determine the whereabouts of the Mother and the child. Their attorney had learned what was believed to be an accurate address and telephone number for the Mother's mother in *798 Miami, Florida, but when the attorney called that number and explained he was trying to contact the Mother, the woman on the phone became hostile and uncooperative, and refused to disclose the Mother's whereabouts. Several other measures were employed in an effort to contact and serve the Mother, but without success. Finally, a private investigator was employed, who ran several skip trace searches and turned up one new address in Houston, Texas. Copies of the petition and summons were sent with return receipt requested to the post office box, as well as to two other different street addresses in Houston. The copies sent to the post office box were returned with the notation "addressee unknown," and the copies sent to the other addresses went unclaimed.
Pursuant to the trial court's order allowing service by publication, a Notice of Action was then published once a week for four consecutive weeks beginning on May 20, 1993, in the Tallahassee Democrat, a daily newspaper published in Leon County. Additionally, as required by the court, notice was mailed to the Mother's mother in Miami.
Eventually, through means not revealed by the record, the Mother gained notice of the petition and, appearing specially through counsel on June 21, 1993, filed a Motion to Dismiss and Motion to Quash Service. The unsworn motion asserted that the trial court lacked subject-matter jurisdiction because the child did not live in Florida for the 6 months preceding the filing of the petition; that the trial court lacked personal jurisdiction over the Mother because the petition failed to allege any basis for long-arm jurisdiction; that service of process and service by publication were insufficient; and that the petition, itself, failed to state a cause of action because it failed to allege specifically the best interests of the child and a substantial change of circumstances occurring since the entry of final judgment.
This motion was heard by the trial court on September 29, 1993, at which time the Mother was represented by her attorney. As a result, the trial court entered the order under review. No evidence was presented to the court in support of the Mother's contentions that she and the child resided in Texas; the only information before the court was the speculative allegation in the petition that the Mother was believed to reside at an unknown location in Houston. Nevertheless, the trial court dismissed the petition
on the express condition that the Mother files with the Court within 14 days from the date of this Order a letter from an attorney admitted to practice in the state of Texas stating that he or she is authorized to and will accept service of process for the Mother in any proceeding instituted in Texas to determine custody or visitation rights as to the parties' minor child.
The order further provided that should the letter not be received, the Mother's motion to dismiss and quash service of process would be denied. A letter from a Texas attorney setting forth authorization to represent the Mother in Texas was filed with the court on October 8, 1993, and the petition thereupon stood dismissed.
Appellants argue that the trial court obviously dismissed the petition on the basis that Florida was an inconvenient forum, and that the court erred in doing so without making the requisite findings of fact. We agree. The trial court had jurisdiction of the dissolution and custody dispute by reason of its entry of the final judgment, which expressly retained jurisdiction to consider future child support issues. Furthermore, the trial court was authorized to exercise jurisdiction by section 61.1308, Florida Statutes (1991), which provides that a court of this state has jurisdiction to make a child custody determination by modification decree if Florida "[h]ad been the child's home state within six months before commencement of the proceeding and the child is absent from the state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or other person acting as parent continues to live in this state." § 61.1308(1)(a)2., Fla. Stat. (1991). According to the petition filed in this case, at the time the Mother filed her petition for dissolution, the child had lived in Florida her entire life, and Florida was the child's home state. In addition, according to allegations in the petition, the child had been absent from Florida less than 6 months when the petition was filed, *799 and the Father continued to live in this state, as did the child's paternal grandparents. No prior action raising an issue of child visitation rights had been filed by any party in Texas or in any other state. Without question, the Florida circuit court had jurisdiction over the parties and was, based on the facts appearing on the face of the petition, a proper court to hear and determine the visitation issue.
Recently, the Florida Supreme Court expressly rejected the notion that section 61.1308 "somehow operates to `automatically' terminate jurisdiction already validly acquired merely because the child has resided outside the state for more than six months when the child clearly has maintained significant contacts with Florida." Yurgel v. Yurgel, 572 So.2d 1327, 1331-32 (Fla. 1990). The court explained:
To the contrary, jurisdiction must be presumed to continue once it is validly acquired under section 61.1308; and it continues up until a Florida court expressly determines on some other basis that jurisdiction no longer is appropriate, until virtually all contacts with Florida have ceased, until some other Florida statute terminates jurisdiction, or until jurisdiction is terminated by operation of the PKPA [Parental Kidnapping Prevention Act].
Id. at 1332 (emphasis in original). The supreme court emphasized that the trial court that had rendered the original decree in Yurgel "would have retained continuing jurisdiction whether or not a petition was filed during the six-month period or any other period of time, and this jurisdiction would have lasted up until the point that the trial court itself declined to exercise jurisdiction for some other reason, until minimum contacts with Florida were lost, or until the PKPA or other applicable law operated to terminate Florida's jurisdiction." Id. at 1332. Likewise, this court has held that a petition for modification relating to child custody or support "should be addressed to the court which rendered the original decree, even if a second state has become the `home state' of a child." Lamon v. Rewis, 592 So.2d 1223, 1225 (Fla. 1st DCA 1992).
It is readily apparent, therefore, that only if the trial court could find on this record before it that it had been divested of jurisdiction in one of the four ways described in Yurgel should it have dismissed this case. However, none of those events has been shown to have occurred in this case. No other Florida statute apart from the UCCJA provisions would have operated to terminate the court's jurisdiction, and the Parental Kidnapping Prevention Act does not apply to these circumstances.[3]Yurgel, 572 So.2d at 1332. Furthermore, substantial Florida contacts existed at the time Appellants' petition was filed, and such contacts continue to exist. Id. Thus, the only possible justification for the trial court to terminate its jurisdiction with respect to Appellants' petition was its apparent view that Florida was an inconvenient forum and therefore the court should, in the exercise of its discretion, decline to hear the matter. We agree with Appellants that the facts before the trial court do not support this decision.
A court of this state possessing jurisdiction to make an initial or modification decree "may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." § 61.1316(1), Fla. Stat. (1991). The supreme court has held that section 61.1316 simply "codifies and strengthens the longstanding judicial doctrine of inconvenient forum." Yurgel, 572 So.2d at 1329. However, the trial court's discretion under this doctrine "is not unbridled. Its exercise should be based on the established guides for application of the doctrine, vis-a-vis the facts disclosed." Southern Railway Company v. McCubbins, *800 196 So.2d 512, 516-17 (Fla. 3d DCA 1967). Since the plaintiff is usually accorded the choice of forum whenever two or more appropriate forums may be available, upon application for transfer or dismissal on grounds of forum non conveniens, it is the moving defendant who must "meet the burden of showing there is another convenient forum." British-American Insurance Company, Ltd. v. Cladakis, 321 So.2d 448, 449 (Fla. 3d DCA 1975). See also West Shore Glass Corporation v. Hack Industries, Inc., 522 So.2d 1046 (Fla. 2d DCA 1988) (trial court cannot transfer venue where there is no sworn evidence  neither affidavits nor testimony  upon which it could base its order).
The issue of transferring or dismissing a cause on grounds of forum non conveniens traditionally has been an evidentiary matter, and subsection 61.1316(3) provides the following specific factors (in addition to the best interest of the child) that a trial court must consider in determining whether another forum is more appropriate to hear issues regarding child-custody. Thus, transfer or dismissal may be appropriate only:
(a) If another state is or recently was the child's home state;
(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
(d) If the parties have agreed on another forum which is no less appropriate; and

(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 61.1304.
§ 61.1316(3), Fla. Stat. (Emphasis added.) In addition, when a similar proceeding is pending in another state, subsection 61.1316(4) specifically authorizes communication between the Florida court and the court of the other state to exchange information concerning the more appropriate court to exercise jurisdiction. Because no proceeding was pending in Texas or elsewhere when the instant petition was filed, obviously there has been no communication between the lower court and a Texas court, so only factors (b) and (c), supra, even arguably exist in this case. Apart from the Father's speculation that the Mother and child now reside somewhere in Texas, there is not one shred of evidence in the record to establish the existence of that fact. Rather, the information before the trial court indicates, at best, that the child's father, paternal grandparents, and maternal grandmother all remain in Florida, and that the child had been out of Florida for less than 6 months at the time the petition was filed.
A trial court's ruling on a suggestion of inconvenient forum is discretionary, but a court that dismisses an action on that ground abuses its discretion "where there is no record evidence supportive of the court's factual findings." Kies v. Hollub, 450 So.2d 251, 255 (Fla. 3d DCA), pet. for rev. denied, 453 So.2d 1364 (Fla. 1984). In this case, there was no evidence presented to the trial court to suggest that Florida was an inconvenient forum, nor did the trial court make any findings which would support that conclusion.[4]
Ideally, the UCCJA "is meant to prevent competing and inconsistent exercises of jurisdiction by two or more states, not to terminate jurisdiction that already has been validly acquired by Florida." Yurgel, 572 So.2d at 1330. Because the trial court here possessed jurisdiction over the instant dispute, and because there is nothing in the record to support the court's relinquishment of that jurisdiction to Texas, the trial court clearly abused its discretion in granting the Wife's motion to dismiss on the condition that she authorize a Texas attorney to accept service of process for her in any proceeding instituted in Texas to determine visitation rights. To approve the trial court's ruling under these circumstances would merely serve to encourage parental kidnapping, "one *801 of the primary evils the UCCJA was meant to end." Id. Absent compelling reasons based on a factual predicate to support a transfer based on inconvenient forum, this proceeding to determine visitation rights, having been properly instituted in a Florida court, should remain under Florida's jurisdiction until virtually all contacts with this state have been lost. "Any other rule comes perilously close to resurrecting the discredited concept of concurrent jurisdiction in custody disputes." Id.
We note that the trial court expressly ruled that the Mother's motion to dismiss would be denied should she be unable to file the required letter from a Texas attorney. Thus, the court obviously ruled that the petition was legally sufficient to state a claim in regard to the requested visitation that should be heard, a ruling that we conclude was correct. The circumstances alleged in the petition establish more than a mere change in the Father's circumstances by reason of his release from prison, moving to his parents' home, and obtaining employment; they address the very foundation of the initial dissolution decree regarding parental responsibility and visitation rights.[5]See McAlister v. Shaver, 633 So.2d 494 (Fla. 5th DCA 1994). This state has a strong public policy which recognizes that, "Visitation rights concerning minor children should not be denied either parent so long as he or she conducts himself or herself, while in the presence of such children, in a manner which will not adversely affect their morals or welfare. Yandell v. Yandell, 39 So.2d 554 (Fla. 1949)." Baker v. Baker, 366 So.2d 873 (Fla. 4th DCA 1979).
Accordingly, we reverse the appealed order and remand this cause to the trial court for further proceedings on the merits of Appellants' petition.[6]
REVERSED and REMANDED.
KAHN and BENTON, JJ., concur.
NOTES
[1] During oral argument of this cause, the Mother's attorney conceded that she did not know her client's residence address.
[2] Paragraph (d) provides as follows:

(1) Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be:
... .
(d) as directed by the court, including publication, if other means of notification are ineffective.
[3] The relevant portions of the PKPA, found at Title 28, United States Code, section 1738A, are substantially identical to the provisions which appear in Florida's version of the UCCJA. Under the PKPA, a state may not modify the custody decree of another state unless: "(1) it has jurisdiction to make such a child custody determination; and (2) the court of the other State no longer has jurisdiction or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C.A. § 1738A (West 1993). As noted earlier, there is no suggestion regarding another state's competing custody decree.
[4] At oral argument, we granted Appellee leave to file a notice of supplemental authorities on whether an action could be dismissed on grounds of forum non conveniens based solely on a pending petition and an unverified motion without the benefit of any evidentiary support. None of the authorities submitted deals with dismissal on grounds of forum non conveniens, and they are, therefore, not helpful.
[5] The facts and issues in Culpepper v. Culpepper, 408 So.2d 782 (Fla. 2d DCA 1982), cited by Appellee, are totally different from the instant case, completely distinguishing that decision.
[6] We do not express any opinion as to the merits of the petition beyond its facial sufficiency to require the trial court to hear the merits of the visitation claims.