PETERSON, Chief Judge.
Ruben (“great uncle”) and Mitzi (“great aunt”) Golding appeal a final judgment granting Hobert (“grandfather”) and Evelyn Golding’s (collectively, “grandparents”) petition to adopt their minor granddaughters, Jennifer and Jessica Golding. In affirming, we address only the issues relating to the applicability of the Uniform Child Custody Jurisdiction Act (“UCCJA”) to adoption proceedings.
Appellee Hobert Golding is the children’s paternal grandfather, and appellee Evelyn Golding is his wife. Appellant Ruben Golding is the children’s paternal great uncle, and appellee Mitzi Golding is his wife. The children lived with their natural parents in North Carolina until their natural mother sustained serious brain injuries in an automobile accident. In 1990, the mother was found incompetent, and a guardian was appointed for her by a North Carolina court. The guardian was given legal custody of the children, but the guardian later determined she could not care for both the natural mother and the children.
Pursuant to a North Carolina “consent decree,” the great aunt and great uncle were given custody of the children by a North Carolina court. The great uncle later became ill, and the parties to this litigation entered an informal agreement under which the grandfather traveled from Florida to North Carolina and obtained physical custody of the children. The children remained in Florida with the grandparents from September 1992 until June 1993, and Jennifer, of school age, attended school in Florida during this time. Once again the parties entered an informal agreement, and based on the advice of the grandparents’ counsel, the grandparents returned the children to the great aunt *406 and great uncle in North Carolina at the end of the school year in June 1998.
Shortly before the children were returned to North Carolina, the grandparents filed an adoption petition in Florida. A residency requirement precluded a North Carolina adoption proceeding. Both natural parents eventually consented to the adoption, but the great aunt and great uncle, who have never petitioned to adopt the children, resisted it with a motion to dismiss. Their principal contentions were that the petition was precipitous because the mother might recover her competency, and that the Florida court did not have jurisdiction under the Uniform Child Custody Jurisdiction Act. They also stated that they might wish to adopt once the mother’s condition was settled. The Florida court ruled that the UCCJA does not apply to adoptions.
The Florida court eventually found it necessary for the North Carolina court to determine the natural mother’s competence to consent to the adoption, and for the natural mother to re-execute a consent following the North Carolina court’s competency determination. The North Carolina court found the natural mother competent to consent to the adoption, and she executed the consent required by the Florida court. The North Carolina court also found that it was in the best interest of the children that the Florida court decide whether the adoption petition should be granted.
After receiving a copy of that order, and, conducting a hearing on the adoption petition, the Florida court entered a final judgment of adoption. The grandparents then obtained, based on the judgment of adoption, a North Carolina order giving them immediate custody of the children. The great aunt and great uncle petitioned the North Carolina court for the return of custody to them, but the North Carolina court denied the motion, finding that it was in the best interest of the children that the Florida court determine “all issues between the parties as they apply to the minor children”. The great aunt and great uncle had petitioned the Florida court for rehearing of the judgment of adoption, and the motion was heard after the North Carolina court denied their custody request. At the rehearing, they again argued that the Florida court had no jurisdiction under the UCCJA. The court denied the motion for rehearing, and this appeal ensued.
The great aunt and great uncle contend that, because the North Carolina court had issued the initial custody orders, the Florida court lacked jurisdiction under the UCCJA to review the adoption petition. The Florida court, relying on a footnote in Ramey v. Thomas, 382 So.2d 78, 81 n. 1, (Fla. 5th DCA) (UCCJA “not directly applicable” to adoption proceedings), petition for review denied, 389 So.2d 1116 (Fla.1980), determined that the UCCJA does not apply to adoption proceedings. The great aunt and uncle argue that the statement in Ramey was dictum, and that this court should follow instead In the Matter of Adoption of K.C.P., 432 So.2d 620 (Fla. 4th DCA 1983), which reversed a judgment of adoption based on the UCCJA, but in which there appears to have been no controversy regarding the applicability of the UCCJA.[1]
The great aunt and great uncle contend that K.C.P. stands for the proposition that adoption proceedings are “custody proceedings” subject to the requirements of the UC-CJA, and that the Florida court did not have jurisdiction to grant the adoption because the judgment of adoption constituted a modification of the previously issued North Carolina consent decree. They further contend that the definition of a custody proceeding in Florida’s UCCJA is broad enough to include an adoption proceeding, and cite decisions in foreign jurisdictions which have held that the UCCJA applies to adoption proceedings. See e.y., Adoption of Zachariah K, 6 Cal.App.4th 1025, 8 Cal.Rptr.2d 423 (1992); Stubbs v. Weathersby, 113 Or.App. 501, 833 P.2d 1297 (1992); Foster v. Stein, 183 Mich. App. 424, 454 N.W.2d 244 (1990); Gainey v. Olivo, 258 Ga. 640, 373 S.E.2d 4 (1988). We find it unnecessary to revisit Ramey, because we hold that the Florida court had jurisdic *407 tion even if the UCCJA does apply to adoptions.
The North Carolina court issued an order, the consent decree, which gave the great aunt and great uncle custody of the children. If the UCCJA applies to adoption proceedings, in that a judgment of adoption is a modification of a previous custody order, the Florida court was required to recognize and enforce the North Carolina order. 28 U.S.C. § 1738A(a); §§ 61.133, 61.1328, Fla.Stat. (1993). See also Yurgel v. Yurgel, 572 So.2d 1327 (Fla.1990). Nevertheless, the Florida court could modify the North Carolina decree if the Florida court had jurisdiction and if North Carolina declined to assume jurisdiction. 28 U.S.C. 1738a(f); §§ 61.133, 61.1308(d), Fla.Stat. (1993). See also Yurgel, 572 So.2d at 1331-32.
A court may decline to exercise jurisdiction if it determines that another state is the more appropriate forum. Yurgel, 572 So.2d at 1331. This is particularly true when a state has become an inconvenient forum. Id. In the instant case, the rulings of the Florida court, and of the North Carolina court, are tantamount to rulings that North Carolina was an inconvenient forum. Further, the North Carolina court declined to exercise jurisdiction in this case. In its order denying the great aunt and great uncle’s motion to dismiss, the Florida court noted that the grandparents could not seek to adopt the children in North Carolina because North Carolina law provides that only a resident of the state may do so. See N.C.Gen.Stat. § 48-4. The only forum available to the grandparents was the Florida court, and, accordingly,. the court below found that it was in the children’s best interest that the question of adoption be decided in Florida. Furthermore, owing to the children’s lengthy stay in Florida, substantial evidence existed in Florida regarding the grandparents’ care of the children.
Similarly, the North Carolina court twice issued orders holding that it was in the children’s best interest that the Florida court consider the adoption petition. In the first order, in which the North Carolina court held that the mother was competent to consent and that it was in the best interest of the children that Florida decide the adoption petition, the North Carolina court did not expressly decline to exercise jurisdiction, but that is because it had not been asked to modify or enforce the North Carolina custody decree. At that time, the children were in North Carolina with the great aunt and great uncle, the grandparents having honored the North Carolina custody decree, and the great aunt and great uncle had not petitioned the North Carolina court to allow them to adopt or for any other relief. Although the North Carolina court did not expressly decline to exercise jurisdiction, the statement, that it was in the children’s best interest that the Florida court decide whether to grant the grandparents’ petition, is a clear statement that it would decline to exercise jurisdiction if asked.
Further, before the adoption was final, before the great aunt and great uncle’s petition for rehearing was heard below, the North Carolina court expressly declined to exercise jurisdiction. After the grandparents regained physical custody of the children, the great aunt and great uncle petitioned the North Carolina court to have the children returned to them. In denying the petition, the North Carolina court noted that they had filed a similar petition in Florida and found that it was in the best interest of the children that the Florida court determine “all issues between the parties as they apply to the minor children.”
Because the North Carolina court declined to exercise jurisdiction, the Florida court could rule on the adoption petition if it had jurisdiction. Section 61.1308, Florida Statutes (1993), provides in part:
61.1308 Jurisdiction.—
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
⅜ ⅜ ⅛: ⅜ ¾: ⅜
(d) 1. It appears that no other state would have jurisdiction under the prerequisites substantially in accordance with paragraph (a), paragraph (b), or paragraph (c), or another state has declined to exer *408 cise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
(2) It is in the best interest of the child that a court of this state assume jurisdiction.
See also 28 U.S.C. § 1738A(c)(l)(D). Since the North Carolina court declined to exercise jurisdiction because it was in the children’s best interest that the Florida court rule, and since the Florida court found it was in the children’s best interest that it assume jurisdiction, the Florida court had jurisdiction under the portion of section 61.1308(l)(d), emphasized above. We therefore hold that, even assuming Florida’s UCCJA applies to adoptions, the Florida court had jurisdiction in the cause. The judgment of adoption is, therefore, affirmed.
AFFIRMED.
GRIFFIN, J., concurs in result only.
THOMPSON, J., concurs and concurs specially, with opinion.

. See also, In Re Adoption of C.L.W., 467 So.2d 1106 (Fla. 2d DCA 1985) (same); Yon v. Fleming, 595 So.2d 573 (Fla. 4th DCA 1992) (holding UCCJA applies in chapter 742 paternity proceedings where custody is in issue).