666 So.2d 568 (1996)
William G. ROHLFS, Appellant,
v.
Pamela F. ROHLFS, Appellee.
No. 94-2126.
District Court of Appeal of Florida, Third District.
January 17, 1996.
*569 Diane Tolbert Covan, Key West, for appellant.
John E. Bigler, Jr., and Julie D. Leckart, Key West, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and BASKIN, JJ.
PER CURIAM.
William G. Rohlfs appeals several orders adjudicating a dispute concerning enforcement of a visitation order and awarding attorney's fees. We affirm, in part and reverse, in part.
In 1981, William and Pamela Rohlfs, who are both Marine Corps officers, were married in Nevada. Their military careers have required that the parties frequently relocate. The parties resided in Japan from June 1983 until August 1986 when they were reassigned to Virginia; they lived there with their two children until June 1987. At that time, they were reassigned and lived in California until December 1989 when the parties were stationed in Monroe County, Florida.
In October 1991, a Florida court entered a final judgment dissolving the parties' marriage. In that action, the parties asserted they were Florida residents. The judgment awarded the wife primary residential custody of the children; the court ordered shared parental responsibility. As to visitation, the settlement agreement incorporated into the judgment provided that the children would spend 40 days during the summer with each parent. Following entry of the dissolution judgment, the parties filed numerous motions seeking enforcement and modification of the final judgment. In June, 1991, the court entered an order providing that upon the parties' failure to agree on summer visitation dates, the former husband should select which portion of the summer to exercise his visitation with the children and to notify the wife of his selection.
The former husband was transferred to California in August 1992. The former wife and children remained in Florida until August 1993 when she was transferred to Virginia.[1]
In April 1994, the former wife filed a motion in Florida to set summer visitation. The parties stipulated to the former husband's visitation choice: the children were to visit him in California from June 9 until July 19, 1994. The court entered an order in accordance with the stipulation and the children went to California for visitation.
In July 1994, the former husband filed a petition to change custody in California; he alleged that the former wife neglected the children.[2] The California court *570 entered an ex parte temporary order restraining the parties from removing the children from California without consent of both parties or order of the court.[3] The order provided that the Florida orders would remain in effect. The wife was served with the order at the airport when she went to meet her children on July 19. Shortly thereafter, in Florida, she filed a motion for an emergency order to show cause why the father should not be held in contempt for failure to return the children in accordance with the stipulated visitation order.[4]
The Florida court ruled that it had jurisdiction to enforce the May 1994 stipulated order delineating summer visitation. The former husband complied with the order and returned the children. The court entered other orders on pending motions concerning contempt and attorney's fees. The father seeks reversal of the orders. The father contends that the Florida court did not have subject-matter jurisdiction over the children.
The threshold issue is whether Florida had continuing jurisdiction over the visitation dispute. The parties do not dispute that the Florida court had subject-matter jurisdiction to enter the final judgment of dissolution of marriage or the 1991 order as to visitation. However, the father contends that the Florida court did not have subject-matter jurisdiction to enter or to enforce the May 1994 stipulated order involving visitation under the Uniform Child Custody Jurisdiction Act [UCCJA].
In Yurgel v. Yurgel, 572 So.2d 1327, 1331 (Fla. 1990), the Florida Supreme Court recognized that the UCCJA provides that "the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction." Thus, the UCCJA "furthers two central objectives: (1) discouraging the shifting of children from state to state as a way of forum shopping, and (2) preventing conflicts among jurisdictions once a state has entered a custody decree." The Yurgel court stated:
[J]urisdiction must be presumed to continue once it is validly acquired under section 61.1308; and it continues up until a Florida court expressly determines on some other basis that jurisdiction no longer is appropriate, until virtually all contacts with Florida have ceased, until some other Florida statute terminates jurisdiction, or until jurisdiction is terminated by operation of the PKPA.
Yurgel, 572 So.2d at 1332.
The former husband incorrectly contends that because the condition that "virtually all contacts with Florida have ceased" is *571 met, Florida is precluded from exercising continuing jurisdiction. In support of that contention, he asserts that all of the parties moved away from Florida as of August 1993. In response, the former wife contends that Florida may exercise continuing jurisdiction by virtue of her Florida residence[5] despite her absence from the state on military assignment. We agree. Absent an intent to the contrary, a parent who is a Florida resident and who is away from this state on military assignment continues to live in this state within the meaning of the UCCJA for the purpose of determining the parent's residence. Welborn-Hosler v. Hosler, 870 S.W.2d 323 (Tex. 14th Ct.App. 1994); Whitfield v. Whitfield, 519 So.2d 546 (Ala. Civ. App. 1987); Mark L. v. Jennifer S., 133 Misc.2d 454, 506 N.Y.S.2d 1020, 1023 (Fam.Ct. 1986); see Mast v. Reed, 578 So.2d 304, 306 (Fla. 5th DCA 1991); Eckel v. Eckel, 522 So.2d 1018 (Fla. 1st DCA 1988); Jeffries v. Jeffries, 133 So.2d 751 (Fla. 3d DCA 1961). See also Taylor v. United Servs. Automobile Ass'n, 21 Fla. L. Weekly D28, D29, ___ So.2d ___, ___ (Fla. 5th DCA Dec. 22, 1995). Here, the former wife, a Florida resident absent from the state on military assignment, continues to live in Florida. As the court stated in Lamon v. Rewis, 592 So.2d 1223, 1225 (Fla. 1st DCA 1992), "a finding of virtually no contact in [Florida] is incompatible with the fact that the [mother] continued to reside in [Florida]." See Whitfield, 519 So.2d at 546; Mark L. v. Jennifer S., 506 N.Y.S.2d at 1020. Cf. Gonzalez v. Gonzalez, 654 So.2d 257 (Fla. 3d DCA 1995) (in determining initial jurisdiction father's residence alone does not constitute a significant connection with Florida). Consequently, under the circumstances of this case, the former wife's residence alone is sufficient to permit Florida to exercise continuing jurisdiction over the visitation dispute. In addition, the parties have returned to Florida to resolve numerous disputes since the dissolution action thereby generating an extensive court record; the children's paternal relatives reside in Florida; and the children had lived in Florida for an extended period of time. See Cabanaw v. Cabanaw, 648 N.E.2d 694 (Ind. 4th Ct.App. 1995).
Although Florida's continuing jurisdiction is usually based on the non-custodial parent's Florida residence and the child's visits to Florida when another state has become the child's home state, Lipsitt v. Lipsitt, 608 So.2d 546 (Fla. 4th DCA 1992); Rothman, 599 So.2d at 261; Steward v. Steward, 588 So.2d 692 (Fla. 5th DCA 1991); Annotation, Child Custody: When Does State That Issued Previous Custody Determination Have Continuing Jurisdiction Under Uniform Child Custody Jurisdiction Act (UCCJA) or Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A, 83 A.L.R. 4th 742 (1991), in this case the former wife's military service presents a unique factual situation. In light of the legal fiction that the former wife continues to reside in Florida, the children need not visit Florida because they live with their mother at military headquarters.[6] Furthermore, although the children have lived in Virginia since August 1993, they were scheduled to move in August 1994 upon their mother's transfer to a military base in Japan. As in the past, the children's home state changes frequently as the mother's military service warrants. This court's determination that Florida has continuing jurisdiction is in keeping with the great deference afforded the state exercising initial jurisdiction in order to discourage forum shopping and relitigation of custody decisions resulting in conflicting decisions. § 61.1304, Fla. Stat. (1993). Because the record fails to establish that the trial court erred in determining that it had jurisdiction, *572 we affirm the order as to jurisdiction.[7],[8]
Next, we reverse the orders of civil contempt. The court erred in ordering the father incarcerated after he complied with the order and returned the children to Florida. See DeMauro v. State, 632 So.2d 727 (Fla. 3d DCA 1994). See also Johnson v. Bednar, 573 So.2d 822 (Fla. 1991). The court also found that the former husband improperly negotiated a check issued to both parties and failed to remit to the former wife her share of the check proceeds. The record is unclear concerning whether the former husband remitted the funds and, therefore, does not support the order. On remand, the court may readdress this issue and enter further appropriate orders, if necessary.
Finally, as to the attorney's fee awards, we reverse the September 16 and October 12 orders awarding fees and ordering payment. Neither order contains findings of fact delineating the period the fees were incurred, the hourly rate or the hours reasonably expended. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985); Sunday v. Sunday, 610 So.2d 62 (Fla. 3d DCA 1992); Frechter v. Frechter, 548 So.2d 712 (Fla. 3d DCA 1989). On remand, the court should enter an order with appropriate findings.[9] In addition, we reverse that portion of the order awarding appellate fees. The absence of an order of this court precludes an award of appellate fees and mandates reversal of the award. Schere v. Z.F., Inc., 578 So.2d 739 (Fla. 3d DCA 1991). We affirm that portion of the October 12 order which directs the father to pay the mother $9,452.34 plus interest, sums originally due pursuant to a May 4, 1994 order.
In summary, we affirm the order finding that the court had continuing jurisdiction to enter and enforce the visitation order as well as that portion of the September 16 order which directs the father to pay the mother $9,452.34, plus interest. We reverse the contempt orders as well as the orders restricting visitation and awarding attorneys' fees.
Affirmed in part; reversed in part; and cause remanded.
NOTES
[1] She was scheduled to transfer to Japan in August 1994; that transfer was delayed by the visitation and custody dispute.
[2] In that petition, he also alleged that the children were domiciled in California, that the wife was moving with the children to Japan, and that the California court must exercise emergency jurisdiction because the children had been subjected to neglect. In addition, he asserted that he and the children have a significant connection with California and filed an ex parte application for a temporary restraining order.
[3] The California Rule to Show Cause and Temporary Restraining Order are dated July 7, 1994. The children were not scheduled to return to Virginia until July 19, 1994. Contrary to the former husband's contention, the California orders did not prevent him from taking the children out of California. The Order to Show Cause stated that "[e]ach parent is restrained from removing the minor children of the parties from the State of California without the prior written consent of the other party or an order of the court." R. 46. The temporary restraining order provided that "[e]xisting orders, Florida Case # 91-314-FR04 remain in effect." R. 48.
[4] We note that California's jurisdiction over the children was limited to a temporary order so that the former husband could seek relief in the proper forum.

Where a ... court is presented with substantial evidence of imminent physical or emotional danger to the child upon the child's return to the custodial parent, it is, under the doctrine of parens patriae, empowered to issue a temporary protective order which will preserve the status quo for such limited time as is required to permit the petitioner to apply for a change of permanent custody to the state which has jurisdiction over such a petition under the provisions of the Uniform Child Custody Jurisdiction Act.
Nelson v. Nelson, 433 So.2d 1015, 1019 (Fla. 3d DCA 1983); Rothman v. Rothman, 599 So.2d 260 (Fla. 4th DCA 1992); Kennedy v. Kennedy, 559 So.2d 713 (Fla. 5th DCA 1990); Alvarez v. Alvarez, 566 So.2d 516 (Fla. 3d DCA 1990). Apparently, the California court recognized its limited jurisdiction because the order provides that the Florida orders shall remain in effect and that the children may be removed from the state with both parents' consent.
[5] The former wife testified that she regards Florida as her home, she intended to retire in Florida, the children's paternal relatives reside in Florida, and the children are enrolled in the Florida prepaid college plan. The former wife maintains a Florida driver's license, her car is registered in Florida, and she is registered to vote in Florida.
[6] The record does not indicate whether the children have returned to Florida to visit their paternal relatives.
[7] Finding that the record does not demonstrate circumstances justifying a restriction on the location of the father's visitation, we reverse the order restricting his visitation. See Yandell v. Yandell, 39 So.2d 554, 555 (Fla. 1949); Davis v. Dixon, 604 So.2d 1236, 1237 (Fla. 3d DCA 1992); Saenz v. Saenz, 602 So.2d 973 (Fla. 3d DCA), review denied, 613 So.2d 8 (Fla. 1992); § 61.13(2)(b)1, Fla. Stat. (1993).
[8] Our holding, however, does not preclude future trial court rulings declining to exercise jurisdiction pursuant to the UCCJA's inconvenient forum provision. § 61.1316(1), Fla. Stat. (1993). As the Yurgel court recognized "there may be circumstances in which equity and fairness require the courts of Florida to decline to exercise continuing jurisdiction because another state is the more appropriate forum. This particularly is true when Florida, for whatever reason, has become an inconvenient forum." Yurgel, 572 So.2d at 1331. See Booker v. Booker, 636 So.2d 796, 799-801 (Fla. 1st DCA 1994); Alvarez, 566 So.2d at 516.
[9] We note that the former husband's counsel stated that the former husband was willing to pay the former wife's attorney's fees and travel costs incurred as a result of the contempt motions.