938 P.2d 1230

**Tammy S. (Hazzard) LADURINI, Plaintiff–Appellant,**

v.

**James B. HAZZARD, Defendant– Respondent.**

No. 22614.

Supreme Court of Idaho, Boise, January 1997 Term.

June 6, 1997.

Daniel L. Hawkley, Boise, for plaintiff–appellant.

Hall, Friedly & Ward, Mountain Home, for defendant–respondent. Jay R. Friedly argued.

McDEVITT, Justice.

This is a child custody case involving the question of whether the Idaho magistrate judge correctly exercised jurisdiction, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), I.C. §§ 32–1101 through 32–1126, after the Idaho magistrate judge was informed that there was a child custody proceeding pending in Florida.

## I.

### FACTS AND PRIOR PROCEEDINGS

The appellant Tammy S. Ladurini (Ladurini) and respondent James B. Hazzard (Hazzard) were married on December 22, 1980, in Las Vegas, Nevada. Ladurini and Hazzard had one child as issue of the marriage. The child was born on April 28, 1985. On December 19, 1986, Ladurini and Hazzard were divorced in Idaho.

Under the December 19, 1986 Idaho decree of divorce, Ladurini and Hazzard were awarded joint legal and physical custody of their minor child.[1] On May 12, 1987, an Idaho order modifying the decree of divorce awarded Hazzard the care, custody, and control of the minor child subject to Ladurini's summer visitation rights, alternating holiday visitation rights, and alternating weekend visitation rights during the remaining nine months of the year.

Hazzard was transferred from the Mountain Home Air Force Base, Idaho, to England in June 1989. On July 2, 1990, Ladurini and Hazzard entered into a stipulation and order regarding Ladurini's summer visitation rights in order to ensure the minor child was returned to Hazzard, in London, England, to begin the upcoming school year. The July 2,

---

1. Idaho's jurisdiction to enter the original decree of divorce is not challenged in this case.

1990 stipulation, indicated that Ladurini was living in Florida. On December 13, 1990, the Idaho magistrate judge entered a memorandum decision concerning Hazzard's motions regarding Christmas visitation.[2]

The minor child resided with Hazzard in London, England from June 1989 through June 1992. Hazzard was transferred back to Idaho in August 1992. Hazzard agreed, on a temporary basis, to allow the minor child to spend the 1992–1993 and 1993–1994 school years in Florida with Ladurini. The minor child resided with Ladurini in Florida from June 1992 through June 1994. The minor child spent the summers of 1993 and 1994 visiting Hazzard in Idaho. Hazzard unilaterally decided that it was not in the minor child's best interests to continue spending the school year with Ladurini. Hazzard enrolled the minor child in a public school in Mountain Home for the 1994–1995 school year.

On October 26, 1994, Hazzard filed a motion before the Idaho magistrate judge requesting the magistrate judge retain jurisdiction and order the minor child remain in Idaho. Hazzard filed an affidavit on October 26, 1994, informing the Idaho magistrate judge that Ladurini had filed a petition in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida, Case No. 94–3492–CA–01, requesting the Florida court modify the decree of divorce and award custody of the minor child to Ladurini. During a November 1, 1994 hearing, Hazzard informed the Idaho magistrate judge that there was an order from the Florida court stating that Florida had jurisdiction and ordering that the minor child return to Florida until a hearing could be held on Ladurini's motion to modify the divorce decree. Hazzard stated that he had filed a motion for reconsideration of the Florida court's order and that Hazzard's motion was still pending before the Florida court.

On November 3, 1994, Hazzard filed an *ex parte* motion for an order allowing the minor child to stay in Idaho until the matter of jurisdiction was determined. On November 4, 1994, the Idaho magistrate judge entered an *ex parte* order allowing the minor child to stay in Idaho until the matter of jurisdiction was determined by the Idaho magistrate judge.

On January 4, 1995, the Idaho magistrate judge entered a memorandum decision that stated: "Therefore, it is the Court's decision, that although Florida has the ability to act herein, this Court should maintain its jurisdiction to hear all present and future proceedings pertaining to [the minor child's] care, custody and control."

Ladurini appealed the Idaho magistrate judge's January 4, 1995 decision, to the district court. The district judge initially ruled in favor of Ladurini, finding that the Florida court had exercised jurisdiction in conformity with the UCCJA at the time Hazzard filed his action in Idaho and that under I.C. § 32–1106(a) the Idaho magistrate judge could not exercise jurisdiction unless the Florida proceeding was stayed by the Florida court.

Hazzard filed a petition for rehearing which was granted by the district court. On November 1, 1995, the district court ruled in favor of Hazzard and affirmed the decision of the Idaho magistrate judge. Ladurini appealed to this Court.

## II.

### THE IDAHO MAGISTRATE JUDGE HAD CONTINUING JURISDICTION OVER THE DIVORCE DECREE

Ladurini argues that the Idaho magistrate judge should not have exercised jurisdiction since the Idaho magistrate judge was aware that a petition to modify the divorce decree

2. The December 13, 1990 memorandum decision, refers to "proceedings instituted in Florida which ultimately led to the creation of a 'Joint Stipulation and Judicial Plan.'" The minutes of the October 19, 1995 rehearing on appeal, indicate that Hazzard's counsel informed the district judge that "no hearing pertaining to the Divorce Decree were [*sic*] ever held in Florida." Counsel for Ladurini did not argue that a hearing was held regarding the divorce decree in Florida. The district judge signed the October 19, 1995 minutes.

was pending before a Florida court and that on October 25, 1994, the Florida court entered a temporary order finding the Florida court had jurisdiction under the UCCJA. Hazzard's motion before the Idaho magistrate judge requesting Idaho retain jurisdiction was filed on October 26, 1994.

Ladurini contends that under I.C. § 32–1106, the Idaho magistrate judge should have stayed Hazzard's Idaho proceeding and communicated with the Florida court to determine the most appropriate forum to litigate the child custody issues. Ladurini argues that Florida was properly exercising its jurisdiction pursuant to the UCCJA. Hazzard counters that I.C. § 32–1106(a) does not apply in this case since this case does not involve a question of initial jurisdiction; this case involves jurisdiction over a motion to modify an existing divorce decree and therefore only I.C. § 32–1114 and the Federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (PKPA), apply.

Idaho Code § 32–1106 states that

[a] court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

Idaho Code § 32–1114(a) states:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears that the court which rendered the decree does not have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.

Florida has adopted a statute similar to I.C. § 32–1114(a):

(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless:

(a) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree; and

(b) The court of this state has jurisdiction.

F.S. § 61.133 (1995).

In *Yurgel v. Yurgel,* 572 So.2d 1327 (Fla. 1990), the Florida Supreme Court interpreted F.S. § 61.133. In *Yurgel* the final judgment of dissolution of the marriage was entered in Florida in March 1986. *Yurgel,* 572 So.2d at 1328. The judgment in *Yurgel* gave primary residence of the children to the father. *Id.* The children left Florida with their father in August 1986 and took up permanent residence in New York. *Id.* Neither party in *Yurgel* challenged Florida's initial jurisdiction of the custody dispute. *Id.*

In December 1986 and in November 1987, the mother in *Yurgel* filed a petition before the Florida court to modify the custody provisions of the divorce decree. *Id.* The trial court in *Yurgel* denied the mother's petition and she appealed. *Id.* The Florida district court of appeals held that the trial court in *Yurgel* lost jurisdiction of the custody dispute because the children had been outside Florida for more than six months prior to the date the November 1987 amended petition to modify was filed. *Id.* The district court of appeals in *Yurgel* relied upon F.S. § 61.1308, which is similar to I.C. § 32–1103. The mother in *Yurgel* appealed to the Florida Supreme Court. The Florida Supreme Court quashed and remanded the lower court's decision in *Yurgel.*

The *Yurgel* court noted that the UCCJA "forbids a state to modify the custody decrees of other states unless those other states no longer have, or have declined to exercise, jurisdiction." *Yurgel,* 572 So.2d at 1329. The *Yurgel* court also recognized the preemptive effect of the PKPA and that under section "d" of the PKPA, the jurisdiction of a court that has made a custody determi-

nation continues "as long as the requirement of subsection (c)(1) of [the PKPA] continues to be met and such State remains the residence of the child or of any contestant." *Yurgel*, 572 So.2d at 1329. Subsection (c)(1) of the PKPA states: "A child custody determination made by a court of a State is consistent with the provisions of this section only if—(1) such court has jurisdiction under the law of such State...."

Interpreting Florida's UCCJA provisions, the *Yurgel* court drew a distinction between cases involving a state's continuing jurisdiction over custody disputes for which jurisdiction has already been properly acquired and cases concerning a determination of when a court may acquire initial jurisdiction over a custody dispute. *Yurgel*, 572 So.2d at 1330–31. The *Yurgel* court applied F.S. § 61.133 based upon the court's determination that *Yurgel* involved a question of continuing jurisdiction. The *Yurgel* court described Florida's UCCJA as follows:

> "the rules governing modification jurisdiction are markedly different from the rules applicable to initial jurisdiction." Initial jurisdiction is governed, as we have noted above, primarily by Section 3 of the UCCJA, which is codified as section 61.1308. "Modification jurisdiction," however,
>
>> is governed primarily by Section 14 [codified at section 61.133], reinforced, where necessary, by the stronger clean hands rule of Section 8(b) [codified at § 61.1318(2), Fla.Stat. (1987) ]. As the Commissioners' Note to Section 6 states, "once a custody decree has been rendered in one state, jurisdiction is determined by Sections 8 and 14." *This means that only one state—the state of continuing jurisdiction—has power to modify the custody decree. Only that state decides whether to decline the exercise of its jurisdiction in any particular case.*

*Yurgel*, 572 So.2d at 1331 (citations omitted). The *Yurgel* court held that Florida's UCCJA "does not operate to divest a court of continuing jurisdiction unless virtually all contacts have been lost with the forum state." *Yurgel*, 572 So.2d at 1331 (citations omitted).

The Florida Supreme Court rejected the district court of appeals holding in *Yurgel* that F.S. § 61.1308 operated to automatically terminate jurisdiction already validly acquired merely because the minor child had resided outside the state for more than six months. *Yurgel*, 572 So.2d at 1331. The *Yurgel* court concluded that such jurisdiction would continue until a Florida court expressly determined that jurisdiction was no longer appropriate, until virtually all contacts with Florida had ceased, until some other Florida statute terminated jurisdiction, or until jurisdiction was terminated by operation of the PKPA. *Yurgel*, 572 So.2d at 1332.

The Florida court in the present case failed to follow F.S. § 61.133 and the holding in *Yurgel*. Prior to entering the October 25, 1994 temporary order, the Florida court should have first considered whether Idaho had jurisdictional prerequisites pursuant to the UCCJA.

It is undisputed in the present case that the December 19, 1986 decree of divorce, was properly entered by an Idaho court. In June 1989 Hazzard was transferred from the Mountain Home Air Force Base, Idaho, to England. Hazzard was transferred back to Idaho in August 1992. By 1990, Ladurini had moved to Florida. The minor child moved with Hazzard to England and was spending summer vacation with Ladurini in Florida. With Hazzard's acquiescence, the minor child spent the 1992–1993 and 1993–1994 school years with Ladurini in Florida. The minor child spent the summer of 1993, the summer of 1994, and thereafter in Idaho with Hazzard.

Ladurini argues on appeal that Idaho courts continued to have jurisdiction over the divorce decree until Ladurini, Hazzard, and the minor child ceased living in Idaho. The Idaho magistrate judge's January 4, 1995 decision, found that Hazzard continued to reside in Idaho and concluded Idaho had continuing jurisdiction over the divorce decree in this case. The record in this case

indicates that Ladurini failed to challenge this finding. This Court has held that it will not address issues presented for the first time on appeal. *Henderson v. Smith,* 128 Idaho 444, 451, 915 P.2d 6, 13 (1996).

The Idaho magistrate judge did not decline to assume jurisdiction. The Florida court did not inquire whether Idaho was going to decline to exercise jurisdiction. The Florida court should have communicated with the Idaho magistrate judge, determined the Idaho magistrate judge was going to exercise Idaho's continuing jurisdiction, and deferred to the decision of the Idaho magistrate judge pursuant to the mandate of I.C. § 32–1114 and F.S. § 61.133. We affirm the decision of the Idaho magistrate judge that Idaho had continuing jurisdiction over the divorce decree.

### III.

### CONCLUSION

The decision of the Idaho magistrate judge is affirmed. We award costs to respondent but no attorney fees on appeal.

JOHNSON, SILAK and SCHROEDER, JJ., concur.

TROUT, Chief Justice, concurring in the result of the court's opinion.

The Florida trial court made a determination that it had jurisdiction under the UCCJA to modify the original divorce decree entered in Idaho. Idaho courts should not review the substance of that determination and substitute their judgment for that of the Florida court unless the Florida court did not follow the UCCJA in making that determination. Because the trial court in Florida acted in conformity with the UCCJA in making its jurisdictional determination, we should defer to the factual findings and conclusion of the Florida court.

We have recently learned, however, that the District Court of Appeals of Florida, Second District, has reversed the Florida

trial court's jurisdictional determination and has ruled that Idaho has continuing jurisdiction to modify the decree under the UCCJA. To provide the parties with a forum within which to resolve their custody dispute, I reluctantly concur with the result reached by the majority but continue to disagree that an Idaho court can or should examine the substance of a foreign court's determination of jurisdiction if that determination is made in accordance with the UCCJA.