1999 SD 96

**Robert V. MILEY, Plaintiff and Appellee,**

v.

**Lori A. MILEY, n/k/a Lori A. Rust, Defendant and Appellant.**

**No. 20697.**

Supreme Court of South Dakota.

Considered on briefs Feb. 24, 1999.

Decided July 28, 1999.

Terry J. Sutton of Sutton & Bauer Law Offices, Watertown, attorney for plaintiff and appellee.

Roger W. Ellyson of Ellyson Law Office, Watertown, attorney for defendant and appellant.

PER CURIAM.

[¶ 1.] In *Fuerstenberg v. Fuerstenberg,* 1999 SD 35, 591 N.W.2d 798, we concluded that the trial court did not abuse its discretion in finding South Dakota a convenient forum to hear a child custody modification request where the trial court entered the initial custody decree and continued to hear, without objection, custody and visitation disputes, even though the mother and child lived out-of-state. In this case, however, we conclude that the trial court that entered the initial custody decree did not abuse its discretion in finding South Dakota an inconvenient forum to hear Lori A. Miley's (Mother) request for modification of child custody where Robert V. Miley (Father) and the three children lived out-of-state for over four years with no in-volvement with the South Dakota court system.

### Facts

[¶ 2.] In 1989, Father filed for divorce after Mother became pregnant with another man's child. They agreed to joint custody of their two sons and one daughter, who were then five, four, and three years old. They also agreed that Father would receive actual physical custody of the children. The trial court entered the judgment and decree of divorce. Mother then married Stepfather, a farmer who was the father of her unborn child. Father also remarried and later divorced.

[¶ 3.] Between 1991 and 1994, the parties appeared before the trial court on many occasions seeking to modify visitation. The issues were consistent and centered around whether the children, when visiting Mother, should be allowed to be around farm machinery, firearms, and a relative who exhibited inappropriate sexual behavior.

[¶ 4.] In April 1994, Father gave Mother notice of his intention to move from South Dakota. He was not advancing in his current job and had an opportunity to move to Arizona and work with his uncle in a landscaping business. Mother stipulated to allow Father to remove the children to Arizona. In July 1994, the trial court filed an amended order allowing the relocation and amending the visitation provisions.

[¶ 5.] The parties continued their bickering over visitation. It was exacerbated in May 1995, when Mother and Stepfather's young son was tragically killed in a farm accident. In November 1995, the trial court entered an order amending the visitation arrangement.

[¶ 6.] There was no activity in the court file until June 1998, when Mother petitioned for custody of the children who were now fourteen, thirteen and twelve years old. In support of her petition, each

child filed an identical affidavit stating a desire to live with Mother.[1]

[¶ 7.] Father filed a motion to transfer arguing that "this is an inconvenient forum, consistent with SDCL 26–5A, Uniform Child Custody Jurisdiction Act." Following a hearing, the trial court agreed, entered extensive findings of fact and conclusions of law and filed an order declining jurisdiction.

[¶ 8.] Mother appeals, contending that the trial court erred by granting Father's motion to decline jurisdiction in South Dakota because it was an inconvenient forum.

### Standard of Review

[¶ 9.] "Whether a court is a convenient forum under the Uniform Child Custody Jurisdiction Act (UCCJA) is a decision we review under the abuse of discretion standard." *Fuerstenberg*, 1999 SD 35 at ¶ 16, 591 N.W.2d at 804.

### Analysis and Decision

[¶ 10.] **Did the trial court abuse its discretion in deferring the child custody modification issue to an Arizona court?**

[¶ 11.] "In an action for divorce, the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." SDCL 25–4–45. In determining initial, modification and enforcement juris-

diction in interstate child custody disputes, courts must adhere to the jurisdictional requirements of the UCCJA, SDCL ch. 26–5A, and the prohibitions of the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. *Fuerstenberg*, 1999 SD 35 at ¶ 17, 591 N.W.2d at 804; *See Lustig v. Lustig*, 1997 SD 24 at ¶ 6, 560 N.W.2d 239 at 242.

[¶ 12.] This case does not involve deciding initial jurisdiction. Rather, it focuses on a court's jurisdiction to modify the child custody provisions of an existing divorce decree.

Under the UCCJA, the state that granted the initial custody decree maintains exclusive continuing jurisdiction over later custody questions until all the litigants have moved from the state or the initial decree state declines to further exercise jurisdiction. SDCL 26–5A–14; *see* SDCL 25–4–45 (divorce court maintains modification jurisdiction in custody matters); Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 FamLQ 203, 214 (1981); *see also* UCCJA § 6, comment, National Conference of Commissioner on Uniform State Laws (stating "once a custody decree has been rendered in one state, jurisdiction is determined by Sections 8 [unclean hands provision] and 14"); *see e.g. Yurgel v. Yurgel*, 572 So.2d 1327,

---

1. Each affidavit stated as follows:

That I have a close relationship with both of my parents and do not want to hurt either of their feelings and I believe both parents have done the best they could to provide for me and my siblings, however, I do wish to live with my mother on a full-time basis on her and her husband, Roger Rust's, farm in the state of South Dakota for the following reasons:

A. I don't particularly like the school that I attend in the state of Arizona and the living situation with my father's uncle, Ray Olson, whom I believe has a drinking problem.

B. I would enjoy living with my mother and her husband on their farm near Goodwin, South Dakota.

C. I would like to attend school in South Dakota.

D. I want to live nearer to my relatives, grandparents, uncles and aunts and cousins that live in the state of South Dakota.

E. I want to continue to have a close relationship with my father and I know my mother would allow frequent contacts with him and his family as often as I desire.

F. I love equally both of my parents however I believe and so do my siblings believe that we would be better off and happier if we live in South Dakota with my mother and her husband.

1331–32 (Fla.1990); *Ladurini v. Hazzard,* 130 Idaho 192, 938 P.2d 1230, 1233 (1997).

*Fuerstenberg,* 1999 SD 35 at ¶ 18, 591 N.W.2d at 805. Consequently, the trial court was correct in its conclusion that it had continuing jurisdiction under the UCCJA since it had entered the original South Dakota custody decree and Mother, one of the parties, continues to reside here.

[¶ 13.] This does not end the analysis under the UCCJA, however.

A court may nonetheless decline its jurisdiction "if it finds that it is an inconvenient forum to make a custody determination ... and that a court of another state is a more appropriate forum." SDCL 26–5A–7. Ultimately, the question comes down to whether "it is in the interest of the child that another state assumes jurisdiction." *Id.* In making this decision, a court should consider the following nonexclusive factors:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate.

*Fuerstenberg,* 1999 SD 35 at ¶ 20, 591 N.W.2d at 805. The PKPA also authorizes declination of jurisdiction. 28 U.S.C. § 1738A(f)(2); *Lustig,* 1997 SD 24, 560 N.W.2d at 242, n. 2.

 [¶ 14.] The trial court had been involved with the family from the time of the divorce in 1989 until resolution of a visitation issue in November 1995. By agreement Father has had physical custody of the children since 1989 and he and the children have lived in Arizona, with Mother's consent, since July 1994. In the years since then the family was not been involved in South Dakota court system. It was only when Mother petitioned for a change of custody in mid–1998 that the same trial judge that previously dealt with the situation was again asked to resolve the custody dispute.

[¶ 15.] By this time, Father and the children had lived in Arizona for four years. There they had attended school and church, received counseling, participated in activities, and lived in the same household as an uncle. Evidence regarding the last four years of their life, most of it free from South Dakota court involvement, is more readily available in Arizona. Their South Dakota experience in these years was limited to a week at Christmas and eight weeks during the summer with maternal relatives.

[¶ 16.] Under these circumstances, the trial court determined that an Arizona court was better suited to decide whether to grant the children's request to live with Mother was "in the interest" of the children,[2] SDCL 26–5A–7, and exercised its discretion to decline jurisdiction. Our review of the record supports the trial court's discretion to decline jurisdiction. Up-to-date evidence of the children's present or future care, protection, training, and personal relationships is more readily available in their home state of Arizona. There was no abuse of discretion.

[¶ 17.] Affirmed.

[¶ 18.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, participating.

---

**2.** *Compare Fuerstenberg,* 1999 SD 35 at ¶ 21, 591 N.W.2d at 806.