724 So.2d 1246 (1999)
Robert THOMAS, Appellant,
v.
Karen Jurban THOMAS, Appellee.
No. 97-2653.
District Court of Appeal of Florida, Fourth District.
January 27, 1999.
Viktoria L. Gres, Key Biscayne, for appellant.
Karen O'Brien Steger of Law Offices of Steger & Steger, P.A., Stuart, for appellee.
EN BANC
FARMER, J.
In this appeal involving difficult questions of child custody, the order now engaging our review denies a motion to transfer a pending modification of child custody case to Ohio. We recognize jurisdiction under rule 9.130 to review this order as a determination in the nature of venue, reverse the trial court, and direct that the pending custody case be dismissed in favor of a more convenient forum in the Common Pleas Court in Ohio.
The history of this case really began outside of Florida. Several years ago, the parents filed a joint petition for dissolution of marriage in Ohio. In a separation agreement there, they agreed that the father was the residential parent of their daughter, Angela, and that the child could spend the summer with the mother. Soon afterwards the mother took Angela to Florida, ostensibly for only a two-week vacation. Never intending to return with Angela to Ohio, she instead established residency in Florida and filed a petition for dissolution of marriage in the Nineteenth Judicial Circuit in Martin County. In spite of the fact that she did not allege anything about their child and failed to serve the father with process, he was able to locate her and appear in the Florida action.
At some point allegations arose that the mother had failed to provide adequate food or shelter for Angela in this state and had knowingly allowed her to be abused by the mother's boyfriend (now her husband). In time Angela was taken into custody by HRS and became a temporary ward of the state. The mother and friend were charged with felony child abuse, and they pleaded no contest to two misdemeanor counts. Angela *1247 being in custody of the Florida authorities, the father submitted to the jurisdiction of the Florida court in the dissolution proceedings. In an interim order, the court awarded temporary custody to the father in Ohio and did not permit the mother to have visitation except through the supervision of HRS or Ohio Family Services.
The final judgment entered here in Florida in 1994 designated the father as the primary residential parent and Ohio as the place of custody.[1] At that time the mother was on probation from the child abuse conviction. The court expressly found that the mother was unlikely to allow the father to have frequent and continuing contact with Angela, and correspondingly that the father was more likely to permit the mother to have continuing visitation. The court found that the father lived near his mother, a retired elementary school teacher, just outside Lima, Ohio, and that the grandmother, as well as the father's sister, continued to provide substantial assistance to the father in caring for Angela while the father is working. The court found that the father had a stable family relationship in that area, while the mother has had a succession of addresses in south Florida, and has also had a succession of live-in friends. In fact the court found that the mother had left Angela alone with her current friend even after she had been told of his physical abuse of the child and her stepsister.
In awarding the father primary residential custody, the court allowed the mother only limited visitation with Angela and, at first, only in Ohio. She was required to give 48 hours notice of any visits. She was not allowed overnight visitation, and her boyfriend could not be present during any of her visits. The father was allowed to name someone to supervise the mother's visits. The court allowed 10 days summer visitation in 1994 and 15 days in 1995, and the cost of Angela's travel was to be borne by the mother. The father and daughter have since continuously resided in Ohio, have not resided in Florida, and all the evidence concerning Angela's current circumstances is in Ohio. The court also found that the mother had net income of $1,020 monthly, while the father had $900 monthly. Accordingly, the court ordered the mother to pay the father $174 monthly in child support.
Some two years after the final judgment the mother filed the present modification proceedings seeking custody of Angela. She alleges a substantial change in circumstances in that she has now finished probation and has completed all her parenting and counseling courses required by the court in her criminal case. She further alleges that Angela's older stepsister lives with her on a full time basis. Alleging that the father has hidden Angela and has failed to allow the mother any contact with her, she also claims that the child spends a substantial amount of time with the grandmother and therefore that the father does not have actual custody. The visitation schedule set out in the final judgment, she contends, does not allow sufficient contact with Angela, and she is now able to provide the child with stability and a good home with a stepsister.
The father served a response denying most allegations in her petition. He also filed his own petition seeking a modification of child support. With both modification proceedings at issue, the mother noticed the case for trial. The father then filed a motion to dismiss or transfer the entire case to Ohio on the grounds that he and child have never resided in Florida; that all of the evidence regarding Angela is in Ohio where he and the child reside; that all of the witnesses knowledgeable about Angela's current welfare are in Ohio; and that it would be much less expensive to try the modifications in Ohio rather than transporting the witnesses and evidence to Florida.
At a hearing on the motion to transfer, the mother's lawyer agreed that the father and child have always lived in Ohio and conceded that all the witnesses were in Ohio.[2] The *1248 judge responded by pointing out that, with no dispute as to the critical facts on the inconvenience of venue in Florida, the question was really a legal one. The parties agreed with that characterization. Both parties having submitted memoranda, the court took the matter under advisement. Later the court entered the order we review today.
We first address the question of our jurisdiction. Under the former Florida Appellate Rule 4.2 (1962), a party could take an interlocutory appeal of orders "relating to venue." Under this old rule, an order denying a motion to dismiss on grounds of forum non conveniens was an order relating to venue. Southern Ry. Co. v. McCubbins, 196 So.2d 512 (Fla. 3d DCA 1967). When the supreme court adopted the Florida Rules of Appellate Procedure in 1978, see In Re Proposed Appellate Rules, 351 So.2d 981 (Fla. 1977), the new rule changed the wording relating to nonfinal appeals on venue orders, saying that the district courts have jurisdiction to review nonfinal orders "that concern venue [e.s.]."[3] Although the text was different, the idea seems the same.
In Bedingfield v. Bedingfield, 417 So.2d 1047 (Fla. 4th DCA 1982), however, we held that we lack jurisdiction under rule 9.130(a)(3)(A) to review orders denying motions to transfer custody proceedings to another state. The parties in Bedingfield resided in Georgia, and the divorce case was first begun there. At a hearing on temporary custody the Georgia judge made an oral ruling giving the father liberal visitation. Before the written order could be entered, the wife dismissed the proceeding and took the children with her to Florida. While proceedings were continuing in Georgia, the court there having allowed the father to file a counterpetition for divorce, he located the mother and children in Florida. He then filed a petition here to enforce the Georgia court order on custody and visitation, and the mother responded with her own petition for dissolution of marriage in Florida along with a prayer for custody. The father moved to dismiss the mother's counterpetition on the basis of the UCCJA.[4] In ruling on our jurisdiction to review the order, we said:
"we differentiate between the trial court's refusal to dismiss or stay the child custody determination and its refusal to dismiss or stay the dissolution proceedings. Implicit in the trial court's orders relating to child custody is a finding that Florida is the appropriate forum for a custody determination. Although we do not appear to have jurisdiction to review that finding pursuant to Rule 9.130(a)(3)(A), Fla. R.App.P., which authorizes review of trial court's orders which `concern venue,' we have elected to treat the notice of appeal as a petition for writ of certiorari.

"Rule 9.130(a)(3)(A) apparently applies only to venue within the State of Florida. We recognize that although venue and jurisdiction share a close relationship, they are distinct concepts. `Venue in the technical meaning of the term means the place where a case is to be tried whereas jurisdiction does not refer to the place of the trial but to the power of the court to hear and determine the case.' 20 Am.Jur.2d Courts, § 89 (1965). In order to promote a host of policies which are enumerated in Section 61.1304, Florida Statutes (1981), the Uniform Child Custody Jurisdiction Act requires, in some instances, a court to decline to exercise its jurisdiction in deference to the courts of a sister state. This requirement is in the nature of venue. Because this situation is one closely analogous to venue, we believe the same considerations which justify interlocutory review of venue disputes justify invocation of our certiorari jurisdiction." [e.s.]
417 So.2d at 1048-1049.
The panel was divided, and Judge Hurley did not agree with that reasoning. In dissent he wrote:

"The majority applies a limiting gloss to the rule and holds that it `applies only to venue within the state of Florida.' *1249 Ante, at 1048. I find nothing in the rule to suggest this result. More important, I believe that such a restrictive interpretation violates a fundamental principle of rule construction. Court rules should be construed liberally to effectuate the ends of justice and promote access to the courts. See Director of Revenue v. United States, 392 F.2d 307 (10th Cir.1968); Potts v. Wainwright, 413 So.2d 156 (Fla. 4th DCA 1982) (Hurley, J., concurring). Thus, I submit that the rule should be applied as written, without limitation. Moreover, since the Legislature has seen fit to adopt the Uniform Custody Jurisdiction Act, Section 61.1302, et seq., Florida Statutes (1981), which places venue for certain actions outside the state, this court should not impede the underlying policy of the Act by crafting arbitrary distinctions which preclude interlocutory review of interstate venue determinations.
"Venue is commonly defined as the place where a case is to be tried. To be sure, most venue determinations involve site selections within a state. But, in those rare instances where an interstate compact operates to require the trial of some matters in one state rather than another, even though both states may have subject matter jurisdiction, then, I respectfully suggest that `venue' may cross state lines. I am aware that the doctrine of forum non conveniens may not be used to justify the transfer of a suit to a forum in another state. See Houston v. Caldwell, 359 So.2d 858 (Fla.1978). Nonetheless, by its express provisions, the Uniform Child Custody Jurisdiction Act is an exception to the rule. The language of Section 61.1314(1), Florida Statutes (1981), acknowledges that a Florida court may have subject matter jurisdiction but requires the Florida court to restrain the exercise of its jurisdiction when the court of another state has a pending custody action concerning the same parties. Under the Uniform Child Custody Jurisdiction Act, a court's decision on whether to stay the resolution of a child custody proceeding is essentially a venue determination. Consequently, I would hold that pursuant to Rule 9.130(a)(3)(A), Fla.R.App.P., we have jurisdiction to review the non-final order denying the husband's motion to dismiss or stay the wife's counterpetition for child custody." [e.s.]
417 So.2d at 1051 (Hurley, J., dissenting). In a footnote, he added:
"There is precedent for a broad construction of Florida Rule of Appellate Procedure 9.130(a)(3)(A)'s language that a non-final order need only `concern venue' to be appealable. Rule 9.130's predecessor, Rule 4.2, was interpreted to permit an appeal from an order denying a motion to dismiss based on `forum non conveniens' grounds. Rule 4.2 permitted interlocutory appeals from orders `relating to venue.' The doctrine of forum non conveniens was held to sufficiently relate to venue so as to be appealable. Southern Ry. v. McCubbins, 196 So.2d 512 (Fla. 3d DCA 1967). See also Doctor's Hospital of Hollywood, Inc. v. Madison, 411 So.2d 190 (Fla.1982) (courts may properly consider `practical result' of an order to determine whether the order in question merits a non-final appeal)."
417 So.2d at 1051. We followed Bedingfield in O'Connor v. O'Connor, 447 So.2d 1034 (Fla. 4th DCA 1984). More recently, however, without addressing either of these two earlier precedents, in Davidian v. Kessler, 685 So.2d 13 (Fla. 4th DCA 1996), we exercised nonfinal appeal jurisdiction and reviewed a functionally identical order, one denying a motion to transfer a child custody case to South Carolina. It is obvious that our precedents are in conflict on this issue.
Upon reconsideration of this venue jurisdictional issue, we now agree with the analysis of Judge Hurley. In light of the policies of the UCCJA, it is especially important that the issue as to where the child custody proceeding will be waged be determined with the greatest dispatch. The approach adopted in Bedingfield means that, rather than the expeditious review contemplated by rule 9.130, review would either be extraordinary, i.e., by common law certiorari, and thus limited, or instead by final review after the permanent custody decision had been made in Florida. Both are equally unpalatable.
If by certiorari, the petitioner will have to satisfy the rather stringent requirements of common law certiorari and demonstrate a departure from the essential requirements of law and the complete absence of a remedy by *1250 final review. See Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996). If by final review, a significant part of the authorization in section 61.1316 will have been lost by litigating to finality a child custody question in an inconvenient forum.
Section 61.1316(1) provides that:
"A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum."
The statute is predicated by its explicit text on the venue question being decided before a final decree is entered.[5] It is thus more accurate to conceive of motions under section 61.1316 to dismiss child custody proceedings in favor of venue outside of Florida as being in the nature of a dismissal on grounds of forum non conveniens. As Judge Hurley indicated in his dissent in Bedingfield, forum non conveniens decisions are in reality venue decisions, for they decide whereamong two or more courts with jurisdictionthe case will be actually tried.
Moreover in his dissent, Judge Hurley pointed out that at that time dismissals on grounds of forum non conveniens were controlled by Houston v. Caldwell, 359 So.2d 858 (Fla.1978). It is important to note that Houston has since been cast aside. In Kinney System Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996), the court receded from Houston, saying:
"The rule in Houston has led to [an] unintended result and is likely to lead to even further abuse of judicial resources in the future. Accordingly, we recede from Houston to the extent it conflicts with the views expressed here, and we hereby adopt the federal rule of forum non conveniens as outlined above. All decisions of the district courts relying upon the pertinent holdings of Houston should be considered disapproved, including the decision of the court below, to the extent they are inconsistent with our views here. We further recede from all other case law issued by this Court to the extent it expressly relies on the overruled portions of Houston. For purposes of Florida's forum non conveniens doctrine, opinions of the federal courts that harmonize with the views expressed above should be considered persuasive, though not necessarily binding."
674 So.2d at 93 (footnote omitted). The court went on to adopt a specific rule on forum non conveniens. See now Fla.R.Civ. P. 1.061.[6]
Because our precedents are in conflict as to this jurisdictional issue, we have decided to consider this case en banc to remove the conflict.[7] We therefore recede from Bedingfield and O'Connor to the extent that they hold that we lack jurisdiction under rule 9.130(a)(3)(A) to review orders denying dismissal of child custody proceedings to another state, whether the stated basis for the transfer is under section 61.1316 or instead on the basis of forum non conveniens.[8]
Although decisions on dismissals under section 61.1316 and forum non conveniens grounds are discretionary calls, they are not immune from review. The question of whether a trial judge's decision in a family *1251 law case is subject to reversal under the abuse of discretion standard is one of the most difficult we face. Yet this kind of decision is not beyond our corrective powers. As the court said in Kremer v. Kremer, 595 So.2d 214, 217-218 (Fla. 2d DCA 1992):
"Judicial discretion has never been confused with the raw power to choose between alternatives, such as to go or not to go. Nor is judicial discretion unreviewable simply because the trial judge chose an alternative that was theoretically available to him. As he did with so many complex ideas, Justice Cardozo distilled the essence of the thought in a few words:
`The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to `the primordial necessity of order in the social life.' Wide enough in all conscience is the field of discretion that remains.'
B. Cardozo, The Nature of the Judicial Process, at 141. Cardozo's insight was applied by the court in Parce [v. Byrd, 533 So.2d 812 (Fla. 5th DCA 1988), rev. denied, 542 So.2d 988 (Fla.1989) ]:
`[Judicial discretion] is not a naked right to choose between alternatives. There must be a sound and logically valid reason for the choice made. If a trial court's exercise of discretion is upheld whichever choice is made merely because it is not shown to be wrong, and there is no valid reason to support the choice made, then the choice made may just as well have been decided by the toss of a coin. In such case there would be no certainty in the law and no guidance to bench or bar.
533 So.2d at 814."
As the court in Booker v. Booker, 636 So.2d 796 (Fla. 1st DCA 1994), said:
"the trial court's discretion under this doctrine `is not unbridled. Its exercise should be based on the established guides for application of the doctrine, vis-a-vis the facts disclosed.' Southern Railway Company v. McCubbins, 196 So.2d 512, 516-17 (Fla. 3d DCA 1967)."
636 So.2d at 799-800. When a trial judge's decision is irrational and inconsistent with established legal principles, then an abuse of discretion is more likely to be found.
In this case the facts relevant to the convenience of the Florida forum were conceded by the party opposing the dismissal, and so we need not defer to any fact finding by the trial court. The legislature has set down in section 61.1316 the criteria for determining when Florida is an inconvenient forum and, correspondingly, another state is more convenient. These criteria are as follows:
"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(a) If another state is or recently was the child's home state;
(b) If another state has a closer connection with the child and his or her family or with the child and one or more of the contestants;
(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
(d) If the parties have agreed on another forum which is no less appropriate; and
(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 61.1304."
The principal criterion is the traditional "best interests of the child." The other subparagraphs are in the nature of inquiries to aid in the determination as to where the best interests of the child lie.
In this case, as the conceded facts show, subparagraphs (a), (b), and (c) strongly favor Ohio over Florida. Subparagraph (d) is inapplicable, for there is no agreement between the parties as to forum, unless the original stipulation in Ohio amounts to a concession that Ohio was the logical forum.
*1252 Of the section 61.1304 factors, only subparagraphs (3), (4), and (5) appear to apply to this case.[9] Subparagraph (3) is clearly in favor of the moving party, again because the child has lived in Ohio almost all her life, and all the father's family who have assisted in raising her live there. There is not a long history of repeated litigation between father and mother over custody, so subparagraph (4) might be considered in equipoise. With respect to subparagraph (5), the purpose of deterring abductions applies especially to the mother, who originally removed the child under false pretenses from Ohio to Florida.
In short, the conceded facts are consistent strongly with Ohio as the far more convenient forum and are inconsistent with Florida asserting its jurisdiction. The final judgment of dissolution of marriage entered here in Florida specifically contemplated Ohio as the primary residence of the child. Almost all of the general visitation was limited to Ohio, with only the summer vacations being arguably in this state. Angela and her custodial parent have lived during all pertinent times in Ohio; all the witnesses regarding her welfare are in Ohio; she and the father lack any connection with Florida; and the burden and inconvenience to her and her father in waging the custody battle in Florida are manifest. We therefore hold that under these circumstances it was an abuse of discretion for the trial court to refuse to dismiss or transfer the case to Ohio.
Section 61.1316 also provides that:
"(7) If it appears to the court that it is clearly an inappropriate forum, it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.
"(8) Upon dismissal or stay of proceedings under this section, the court shall inform the court found to be the more appropriate forum of this fact or, if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court."
On remand the trial court shall enter such orders as are necessary and proper to comply with these provisions in arranging that this case be refiled in the Common Pleas Court for Allen County, Ohio, or such other court in Ohio having jurisdiction.
REVERSED.
STONE, C.J., DELL, GUNTHER, WARNER, POLEN, KLEIN, STEVENSON, SHAHOOD, GROSS, TAYLOR and HAZOURI, JJ., concur.
NOTES
[1] We note that the final judgment was entered by a different judge than the one now presiding over the modification proceeding.
[2] At this hearing, the mother's lawyer objected to the father being heard by telephone from Ohio. Cf. Harrell v. State, 709 So.2d 1364 (Fla.1998) (admission of trial testimony through the use of a live satellite transmission by a witness who resides in a foreign country and is not subject to compulsory process does not violate the federal or state constitution Confrontation Clauses).
[3] See Fla.R.App.P. 9.130(a)(3)(A). The Committee Notes to the new rule state that:

"Allowable interlocutory appeals from orders in actions formerly cognizable as civil actions are specified, and are essentially the same as under former rule 4.2. Item (A) permits review of orders concerning venue."
Thus even though the text is slightly different the drafters indicated no real change in substance.
[4] See § 61.1302-61.1348, Fla. Stat. (1997).
[5] As the court explained in Yurgel v. Yurgel, 572 So.2d 1327 (Fla.1990):

"there may be circumstances in which equity and fairness require the courts of Florida to decline to exercise continuing jurisdiction because another state is the more appropriate forum. This particularly is true when Florida, for whatever reason, has become an inconvenient forum."
572 So.2d at 1331.
[6] There has long been authority for courts to transfer actions for the convenience of the parties or witnesses or in the interest of justice to "any other court of record in which it might have brought." See § 47.122, Fla. Stat. (1997).
[7] We distinguish for review purposes orders dismissing an action on forum non conveniens grounds. See, e.g., Decelle v. Kenyon, 667 So.2d 981 (Fla. 4th DCA 1996), and Ennis v. Conran, 648 So.2d 784 (Fla. 4th DCA 1994). In that circumstance where order of dismissal is final rather than nonfinal we have final appeal jurisdiction under rule 9.110.
[8] The concept of forum non conveniens by its very nature encompasses both section 47.122 and rule 1.061.
[9] "The general purposes of this act are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his or her family have the closest connection and where significant evidence concerning his or her care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the family have a closer connection with another state.
(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.
(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible.
(7) Facilitate the enforcement of custody decrees of other states.
(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.
(9) Make uniform the law with respect to the subject of this act among states enacting it." § 61.1304, Fla. Stat. (1997).