921 So.2d 740 (2006)
Rebecca S. STECKLER, Appellant,
v.
Marc E. STECKLER, Appellee.
No. 5D05-669.
District Court of Appeal of Florida, Fifth District.
February 17, 2006.
*741 Richard D'Amico, Daytona Beach, for Appellant.
No Appearance for Appellee.
ORFINGER, J.
The former wife, Rebecca S. Steckler, appeals the trial court's denial of her motion to stay enforcement proceedings and determine jurisdiction, and granting the former husband's motion for contempt and enforcement of final judgment. The former wife and the former husband had three children together. The parties separated in July 2003, at which time the former wife and the children moved to North Dakota. The parties' marriage was dissolved by final judgment in the circuit court of Volusia County, Florida in April 2004. The final judgment provided, in pertinent part, that the parties were to have shared parental responsibility, but that the former wife was to be the primary residential parent for the children, who reside with her in North Dakota. The final judgment also provided that the children spend four consecutive weeks during the summer and Christmas in even-numbered years with the former husband in Florida.
In August 2004, the former husband filed a motion for contempt and for enforcement of the final judgment. The former husband alleged that he had tried to contact the former wife about visitation during the summer of 2004, but she refused to accept his letters or return his phone calls. After due consideration, the trial court modified the custody order, allowing the former husband to have visitation with the children for their entire Christmas break in 2004 as compensation for his inability to have visitation during the summer, as required by the final judgment.
The former husband visited the children in North Dakota during Thanksgiving of 2004. Following the former husband's Thanksgiving visit, the former wife filed a petition for protection against the former *742 husband in North Dakota on behalf of herself and the children. In the petition, the former wife alleged that the former husband posed an immediate and present danger to her and her children. Specifically, the former wife claimed that the former husband abused her while he was in North Dakota for Thanksgiving. The North Dakota trial court granted a temporary domestic violence protection order and set a date for a hearing on the former wife's petition. The former husband appeared at the hearing via telephone without counsel. On December 27, 2004, the North Dakota trial court issued a two-year domestic violence protective order against the former husband. The order provided, in pertinent part:
[Former husband] may call the children once each week on Wednesday between the hours of 7:00 p.m. and 8:00 p.m. central standard time. The children may choose not to talk to their father if that is their wish.
. . . .
[Former husband] has waived his right to Christmas visitation for the year 2004. After Christmas 2004, visitation with the two younger children shall continue as previously ordered. The oldest child may choose not to visit if that is her desire.
In the interim, in compliance with the Florida modified visitation order, the former husband purchased airplane tickets for the children to visit him in Florida over the Christmas holidays. The former husband gave the former wife a copy of the children's itinerary, but she did not send them to visit the former husband, contending that the North Dakota court had determined that the former husband had "waived" his Christmas visit.
The former husband then filed a motion to enforce the visitation order and sought sanctions against the former wife. Because of the North Dakota protection order, the former wife filed a motion to stay the enforcement proceeding to consider the former husband's motion for contempt and enforcement of the final judgment, and to determine jurisdiction. In her motion, the former wife argued that two proceedings were pending in different states concerning the custodial rights of the parties; therefore, the trial court should communicate with the North Dakota court to determine jurisdiction under Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"),[1] and the trial court should afford the North Dakota protective order full faith and credit. After a hearing on the motions, the Florida court denied the former wife's motion to determine jurisdiction, reasoning that since the North Dakota judge did not contact him as required under the UCCJEA, the courts of Florida had not relinquished jurisdiction, and jurisdiction over child custody still remained in Florida. The trial judge determined that the former husband was entitled to make up visitation to compensate for the missed Christmas visit. This appeal followed.
The former wife contends that the trial court erred in failing to afford North Dakota's domestic violence protective order against the former husband full faith and credit under 18 U.S.C.A. § 2265 (2005). The former wife argues that the federal full faith and credit statute preempts any conflicting Florida statutes, including section 61.515, Florida Statutes (2005), which grants Florida courts exclusive, continuing jurisdiction over its child custody decisions.
*743 The United States Code Annotated provides, in pertinent part:
(a) Full faith and credit.Any protection order issued that is consistent with subsection (b) of this section by the court of one State or Indian tribe (the issuing State or Indian tribe) shall be accorded full faith and credit by the court of another State or Indian tribe (the enforcing State or Indian tribe) and enforced as if it were the order of the enforcing State or tribe.
(b) Protection order.A protection order issued by a State or tribal court is consistent with this subsection if
(1) such court has jurisdiction over the parties and matter under the law of such State or Indian tribe; and
(2) reasonable notice and opportunity to be heard is given to the person against whom the order is sought sufficient to protect that person's right to due process. In the case of ex parte orders, notice and opportunity to be heard must be provided within the time required by State or tribal law, and in any event within a reasonable time after the order is issued, sufficient to protect the respondent's due process rights.
18 U.S.C.A. § 2265 (2005). According to the former wife's petition for protection, the most recent incident of abuse occurred in North Dakota. We find that since the alleged abuse occurred in North Dakota, the courts of that state had jurisdiction over the parties to issue an order for protection relating to the incident. The former husband appeared by telephone at the hearing on the former wife's motion for protective relief and was given a reasonable opportunity to be heard in compliance with 18 U.S.C.A. § 2265. Consequently, we conclude that the provisions of 18 U.S.C.A. § 2265 have been satisfied, and North Dakota's domestic violence protective order was entitled to full faith and credit.
However, since the protective order affected Florida's initial custody determination, the protective order is also governed, in part, by the UCCJEA. See § 61.503(4), Fla. Stat. (2005) (defining a "child custody proceeding" to include any proceeding involving protection from domestic violence, in which child custody is an issue). The former wife argues that the federal full faith and credit provisions should preempt section 61.515, Florida Statutes, which, as part of the UCCJEA, grants Florida courts exclusive, continuing jurisdiction over its child custody decisions. We see no conflict between the two statutes. While the UCCJEA generally gives the state that made the initial custody determination exclusive, continuing jurisdiction over those decisions, in emergency situations, the UCCJEA permits other states to obtain temporary emergency jurisdiction to protect a child. § 61.517, Fla. Stat. (2005); N.D. Cent.Code § 14-14.1-15. Since North Dakota modified Florida's initial custody determination in the form of a domestic violence protective order designed to protect both the former wife and the children, we conclude that the North Dakota court acted within the temporary emergency jurisdiction of the UCCJEA.
Next, the former wife claims that the trial court failed to comply with the UCCJEA. Specifically, the former wife argues that the trial court erred by (1) failing to conduct a hearing to determine jurisdiction under the terms of the UCCJEA and (2) failing to contact the North Dakota judge who issued the protective order to determine jurisdiction as *744 required by the UCCJEA.[2] The former wife contends that the trial court erred in refusing to conduct a hearing to determine jurisdiction under the inconvenient forum factors enumerated in section 61.520, Florida Statutes (2005). Under section 61.520, any party may raise the issue of inconvenient forum. Section 61.520(2) provides that "[b]efore determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, ...." Included among the factors a court should consider is whether domestic violence has occurred and is likely to continue in the future, which state could better protect the parties and the child, and the length of time the child has resided outside of the state. Id. In her motion, the former wife requested that the Florida trial court conduct a hearing with the North Dakota trial court to determine which court should exercise jurisdiction. She argued that since North Dakota is better situated to deal with domestic abuse that has occurred in the past and the children have lived in North Dakota since June 2003, North Dakota is the most convenient forum. The Florida trial court disagreed, stating it "shall retain exclusive jurisdiction of the parties, subject matter and parties' minor children, pursuant to [the UCCJEA]."
A trial court's ruling on whether a forum is inconvenient is discretionary. McDaniel v. Burton, 748 So.2d 1072, 1075 (Fla. 4th DCA 1999). "Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable" or "where no reasonable man would take the view adopted by the trial court." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980). While it is unclear whether the trial court considered the relevant factors enumerated in section 61.520(2) since it did not issue any findings of fact on the issue, we nonetheless conclude that the trial judge acted within his discretion in retaining jurisdiction and declining to determine that Florida is no longer a convenient forum for child custody proceedings. Under section 61.515, Florida Statutes (2005), Florida retains exclusive, continuing jurisdiction over child custody issues. The Florida Supreme Court has held that "[a] custody proceeding properly begun in Florida remains under Florida's jurisdiction until Florida determines otherwise, unless virtually all contacts with the state clearly have been lost." Yurgel v. Yurgel, 572 So.2d 1327, 1332 (Fla.1990); see also Miles v. Hyman, 836 So.2d 1097, 1098-99 *745 (Fla. 5th DCA 2003). Neither scenario has occurred here as Florida declined to relinquish jurisdiction, and so long as the former husband is still a resident of Florida, sufficient contacts still remain in the state such that Florida may retain jurisdiction. See Pettinato v. Johnson, 674 So.2d 148 (Fla. 2d DCA 1996); Lamon v. Rewis, 592 So.2d 1223, 1225 (Fla. 1st DCA 1992) (holding that contact with the original state exists when the father continued to reside in that state). Thus, the trial court's decision was reasonable and did not constitute abuse of discretion.
Finally, the former wife argues that the trial court erred in failing to contact the North Dakota trial judge upon learning of North Dakota's protective order. We agree that the trial judge should have communicated with the judge in North Dakota under the terms of section 61.517, Florida Statutes (2005). As previously discussed, the UCCJEA provides the courts of each signatory state with temporary emergency jurisdiction over child custody when it is "necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." § 61.517(1), Fla. Stat. (2005); N.D. Cent.Code § 14-14.1-15. Section 61.517(4) further provides, in pertinent part:
A court of this state which is exercising jurisdiction under §§ 61.514-61.516, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.
§ 61.517(4), Fla. Stat. (2005). Here, the Florida trial court had exclusive, continuing jurisdiction over issues of custody under section 61.515, as it issued the initial custody determination and had not otherwise relinquished jurisdiction. Therefore, in accordance with section 61.517(4), once the trial judge learned of North Dakota's domestic violence protective order, he should have contacted the issuing North Dakota judge to resolve any jurisdictional conflicts. At the hearing, the trial judge asserted that it was the North Dakota judge's responsibility to contact him, stating, "I wasn't under [any] compulsion to act. The judge in North Dakota was." While it is true that the North Dakota judge erred in failing to communicate with the Florida judge before issuing the protective order, this does not negate the requirement imposed on the Florida judge under section 61.517(4) to make contact with his North Dakota counterpart.
We affirm the order of the trial court as to its determination of jurisdiction. We remand with instructions that the trial judge contact the judge in North Dakota to resolve any conflicts that exist between the North Dakota protective order and the Florida child custody order under section 61.517, Florida Statutes (2005). After that, and depending on the current situation, the trial court may order make up visitation, if appropriate.
AFFIRMED IN PART; REMANDED.
GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] The UCCJEA was adopted by Florida in 2002 and by North Dakota in 1999. See §§ 61.501-.542, Fla. Stat. (2005); N.D. Cent. Code §§ 14-14.1-01 to -37 (2005). All provisions pertinent to this case are similarly, if not identically, worded.
[2] In her brief, the former wife also argues that North Dakota had jurisdiction to modify Florida's initial custody determination under the UCCJEA. See § 61.516, Fla. Stat. (2005); N.D. Cent.Code § 14-14.1-14. Although the North Dakota court did not have jurisdiction to modify the existing visitation arrangement outside of a temporary emergency situation, this was an error on the part of the North Dakota court and need not be considered here. See § 61.516, Fla. Stat. (2005); N.D. Cent.Code § 14-14.1-14 (stating that in order to modify an initial custody order, a court must have had jurisdiction to make an initial custody determination and: (1) the court where the initial custody determination was made determines that it no longer has exclusive, continuing jurisdiction, or that a court of another state would be a more convenient forum; or (2) a court determines that the child, the child's parents, and any person acting as a parent no longer reside in the state that issued the initial custody determination); § 61.514, Fla. Stat. (2005); N.D. Cent. Code § 14-14.1-12 (2005) (stating that in order to have initial jurisdiction, the child must live in the state or have lived in the state six months prior to the commencement of the proceeding; in this case, the proceeding commenced on February 27, 2002, when the divorce petition was filed, yet, the children did not move to North Dakota until June 2003).