# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D22-2632
LT Case No. 2016-10991-FMDL

———————————————

ANTHONY T. LITSCH, III

    Appellant,

    v.

JULIE LITSCH n/k/a JULIE MILLS,

    Appellee.

———————————————

On appeal from the Circuit Court for Volusia County.
Matthew M. Foxman, Judge.

Nicholas A. Shannin and Carol B. Shannin, of Shannin Law
Firm, Orlando, for Appellant.

Julie Mills f/k/a Julie Litsch, Fox Lake, IL, pro se.

October 13, 2023

WALLIS, J.

Anthony Litsch ("Appellant") appeals an order denying rehearing of a joint decision by Florida and Illinois courts to transfer jurisdiction over child custody matters from Florida to Illinois. Appellant argues that the Florida court erred in ceding jurisdiction to Illinois, in violation of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). We agree and reverse.

**Facts**

The parties were married in 2009, had one child in 2010, and separated in 2014. In 2016, Julie Mills f/k/a Julie Litsch ("Appellee") filed a petition for dissolution of marriage in Volusia County, Florida. In October of 2016 the Florida court entered a Final Judgment of Dissolution of Marriage, finding jurisdiction over the subject matter and the parties. In the judgment, the court ratified and incorporated agreements regarding shared parenting and timesharing, and it reserved jurisdiction to enforce those same agreements. The parties agreed that Appellant had been exercising the majority of the timesharing with the child in Florida since the inception of the case and that Appellee would not remove the child from Florida without agreement by Appellant in writing or order of the court.

In November 2020, the parties agreed to have the child temporarily live with Appellee in Illinois. They memorialized that agreement by a handwritten statement from Appellant with the understanding that they would revisit this placement depending on how the child responded to living in Illinois.

In February of 2022, the child was hospitalized. Shortly after the hospitalization, Appellant communicated with Appellee expressing disappointment due to not being informed of the hospitalization and notifying Appellee of his intention to travel to Illinois in order to bring the child back to Florida. Appellee thereafter retained counsel and notified Appellant of her intent to keep the child in Illinois. In response, Appellant filed several motions in the Florida court in an effort to regain primary timesharing in Florida.

Ultimately, on September 27, 2022, the Illinois court conducted a UCCJEA hearing to determine which state had jurisdiction. The parties, their attorneys, and both trial judges appeared at the hearing via remote video connection. At the conclusion of the hearing, the Illinois court entered a written order stating that Illinois was the home state of the child for purposes of the UCCJEA and that, over Appellant's objection, Florida ceded and Illinois accepted jurisdiction of the case. The Florida court did not enter a corresponding order. Appellant's motion for rehearing in the Florida court was denied and he timely appealed. We have

jurisdiction over this final order pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(a).

## Discussion

Appellant correctly asserts that the Florida court erred in ceding jurisdiction to the Illinois court by concluding that Illinois was the child's home state.[1] Under the UCCJEA,[2] the determination of a child's home state applies to initial custody determinations. *See* § 61.514(1)(a), Fla. Stat. (2016) (stating that a court may make "an initial child custody determination," *inter alia*, if that state is "the home state of the child on the date of the commencement of the proceeding"); *McIndoo v. Atkinson*, 159 So. 3d 227, 230 (Fla. 4th DCA 2015) ("[T]his 'home state' rule applies to an initial child custody determination"…).

However, once a court has made an initial child custody determination under section 61.514, that court has "exclusive, continuing jurisdiction" over the determination until:

(a) A court of this state determines that the child, the child's parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

---

[1] A child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding." § 61.503(7), Fla. Stat. (2022).

[2] The UCCJEA (sections 61.501–.542, Florida Statutes) has been adopted in 49 states, including Florida and Illinois, to, *inter alia*, "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody" and "make uniform the law" with respect to subject of the UCCJEA. § 61.502, Fla. Stat. (2022).

3

(b) A court of this state or a court of another state determines that the child, the child's parent,[3] and any person acting as a parent do not presently reside in this state.

§ 61.515(1), Fla. Stat. (2022).

---

[3] The legislature's use of the word "parent" in section 61.515(1)(b) appears to be a typographical error because the same provision in the uniform act and in other states uses the word "parents," not parent. *See, e.g.,* Unif. Ch. Custody Jurisd. & Enf't Act § 202 (2022); 750 Ill. Comp. Stat. 36/202 (2022). In addition, section 61.516 allows a Florida court to modify the custody determination of a court of another state if it determines that "the child, the child's *parents*, and any person acting as a parent do not presently reside in the other state." § 61.516, Fla. Stat. (2022). Construing subsection (1)(b) literally would create irreconcilable conflict between that subsection and subsection (1)(a) and section 61.516, would undermine the purposes of the UCCJEA, and would lead to the absurd result of establishing different standards for the courts in different states to determine which court has jurisdiction. For example, if section 61.515(1)(b) applied literally in this case, subsection (1)(a) would require a Florida court to determine, in part, that the child and *both parents* do not have a significant connection with this state," but subsection (1)(b) would only require the Illinois court to determine that the child and *one parent* do not presently reside in Florida. Although Florida courts have previously discussed this discrepancy, they have consistently required that both parents no longer reside in Florida before finding that Florida no longer has exclusive, continuing jurisdiction. *See DeStefanis v. Han Ming Tan*, 231 So. 3d 537, 540 (Fla. 3d DCA 2017) (quoting both provisions and concluding that Florida no longer had jurisdiction because neither parent lived in Florida anymore); *Tidwell v. Tidwell*, 983 So. 2d 742, 743 (Fla. 4th DCA 2008) (same); *Steckler v. Steckler*, 921 So. 2d 740, 745 (Fla. 5th DCA 2006) ("[S]o long as the former husband is still a resident of Florida, sufficient contacts still remain in the state such that Florida may retain jurisdiction.").

Alternatively, a Florida court with exclusive, continuing jurisdiction "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." § 61.520, Fla. Stat. (2022). Before doing so, however, the court must consider whether it is appropriate for a court of another state to exercise jurisdiction, by considering all relevant factors, including eight statutory factors. § 61.520(2), Fla. Stat. (2022).

Neither section 61.515 nor section 61.520 uses the phrase "home state," much less uses it as a basis for Florida to cede its exclusive, continuing jurisdiction under the UCCJEA to another state. Consequently, the Florida court erred in ceding its UCCJEA jurisdiction to Illinois on the ground that Illinois was now the child's home state because the child had been living in Illinois for more than six months. *See Beehler v. Beehler*, 351 So. 3d 1257, 1260 (Fla. 1st DCA 2022) ("This exclusive jurisdiction in fact persists until a trial court of this state 'determines that the child, the child's parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.'"); *Sosa v. Pena*, 351 So. 3d 107, 108 (Fla. 3d DCA 2022) ("Pursuant to section 61.515(1), a Florida court retains exclusive, continuing jurisdiction after making a custody determination until it determines both parents and the children do not reside in or have a significant connection to the state."); *Bock v. Vilma*, 279 So. 3d 1246, 1248 (Fla. 3d DCA 2019) ("The UCCJEA 'does not operate to divest a court of continuing jurisdiction unless virtually all contacts have been lost with the forum state.'" (quoting *Yurgel v. Yurgel*, 572 So. 2d 1327, 1331 (Fla. 1990))); *Baker v. Tunney*, 201 So. 3d 1235, 1239 (Fla. 5th DCA 2016) (holding Florida was child's home state and would remain child's home state until it relinquished jurisdiction, thus its dismissal of custody petition and New York's assumption of home state jurisdiction was improper); *Steckler*, 921 So. 2d at 744 ("Under section 61.515, Florida Statutes (2005), Florida retains exclusive, continuing jurisdiction over child custody issues.").

Appellee correctly asserts that the Florida court based its decision on more facts than merely the amount of time the child had been living in Illinois. The Florida court stated that Illinois was now the child's home state, and Illinois assuming jurisdiction would serve the child's best interest because the child had been living in Illinois for a "lengthy period of time" and receiving services there to address his needs. The Florida court also agreed with the Illinois court's additional findings that the child had been living in Illinois based on the parties' prior agreement, the child attended school and therapy in Illinois, the child was involved in the community, and that continuity was important for the child. However, these statements do not support the Florida court's decision to cede its exclusive, continuing jurisdiction to Illinois under section 61.515(1)(a) or (b), nor could they have because Appellant still resided in Florida and the child still had significant contact with Florida. Nor do these statements support ceding jurisdiction under 61.520 (inconvenient forum) because the findings do not conform to the statutory requirements of that section. *Cf. Poliandro v. Springer*, 899 So. 2d 441, 444 (Fla. 4th DCA 2005) (reversing order dismissing paternity petition and finding Alabama had jurisdiction based solely upon discussion between two judges; court failed to allow parties to be present, record did not contain factual basis to support ceding jurisdiction, and specific findings would be required on remand).[4]

---

[4] Although Appellant does not challenge the Illinois court's statement that the parties agreed that the child could relocate to Illinois, we believe the Illinois court made that statement merely to explain why the child had been living in Illinois. We do not think that the trial court relied on the 2020 relocation agreement as a basis for concluding that Illinois was now the child's home state. Instead, it relied on the length of time the child had resided in Illinois and the child's contacts with Illinois. Consequently, Appellant cannot be faulted for not challenging on appeal the Illinois court's statement about the agreement (and the Florida court's agreement with that statement). Even if the Illinois court had relied on the 2020 relocation agreement to support its decision, that agreement could not be considered a tipsy coachman ground to affirm because, as Appellee correctly notes, it did not comply with section 61.13001(2)'s requirements that a relocation

6

Accordingly, we reverse the order denying rehearing and remand with instructions to the Florida court to vacate its decision to decline its exclusive, continuing jurisdiction, and to "follow the procedures established in the UCCJEA in determining whether it should proceed to hear any matter related to the custody of the child." *Bosh v. Mathis*, 99 So. 3d 631 (Fla. 5th DCA 2012). Those procedures include giving each party the opportunity to present evidence. *Cf. Douglas v. Johnson*, 65 So. 3d 605, 607 (Fla. 2d DCA 2011) (stating that an "opportunity to be heard" under UCCJEA (section 61.518) means an opportunity to present witnesses or evidence); *Poliandro*, 899 So. 2d at 444 ("The case is reversed and remanded to the trial court for further proceedings consistent with this opinion. If, after considering the evidence, the court still decides to transfer the case, the order must contain specific factual findings.").[5]

REVERSED and REMANDED with instructions.

EDWARDS, C.J., and MacIVER, J., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

agreement must define timesharing going forward and be ratified by the court. Thus, it cannot be a basis to conclude that UCCJEA jurisdiction over child custody matters had already changed from Florida to Illinois when the child moved to Illinois with Appellant's consent.

[5] We express no opinion on what the outcome of this hearing should be.